[No. B076776. Second Dist., Div. Four. Nov. 21, 1995.]

MICHAEL BOAZ, a Minor, etc., et al., Plaintiffs and Appellants, v. BOYLE & COMPANY, INC., et al., Defendants and Respondents.

**[And 17 other cases.]***

*Ameen v. *Boyle & Company, Inc.* (No. B076777), *Finazzo* v. *Boyle & Company, Inc.* (No. B076778), *Vitiello* v. *Boyle & Company, Inc.* (No. B076779), *Ferri* v. *Boyle & Company, Inc.* (No. B076782), *Springer* v. *Boyle & Company, Inc.* (No. B076783), *Weinrub* v. *Boyle & Company, Inc.* (No. B076784), *O'Kyle* v. *Boyle & Company, Inc.* (B076785), *Telsey* v. *Boyle & Company, Inc.* (No. B076786), *Schwartz* v. *Boyle & Company, Inc.* (No. B076787), *Murphy* v. *Boyle & Company, Inc.* (No. B076788), *Mannion* v. *Boyle & Company, Inc.* (No. B076789), *Enright* v. *Boyle & Company, Inc.* (No. B076790), *Margolin* v. *Boyle & Company, Inc.* (No. B076791), *Flanigan* v. *Boyle & Company, Inc.* (No. B076792), *Rubenstein* v. *Boyle & Company, Inc.* (No. B076793), *Smith* v. *Boyle & Company, Inc.* (No. B076794), *Weissman* v. *Boyle & Company, Inc.* (No. B076795).

## Counsel

Robins, Kaplan, Miller & Ciresi, Simke, Chodos, Silberfeld & Anteau, Roman M. Silberfeld, Shann D. Winsett and Gretchen C. Pansing for Plaintiffs and Appellants.

Burris, Drulias & Gartenberg, Donald S. Burris, Torgny R. Nilsson, Anderson, Kill Olick & Oshinsky, Jeffrey L. Glatzer, Eric D. Statman, Crosby,

Heafey, Roach & May, James M. Wood, James C. Martin, Joseph P. Mascovich, Dickson, Carlson & Campillo, William A. Hanssen, Sedgwick, Detert, Moran & Arnold, Michael F. Healy, Kathryn H. Edwards, Hawkins, Schnabel, Lindahl & Beck, Laurence H. Schnabel, Adams, Duque & Hazeltine, Bannan, Green, Smith & Frank, Ronald F. Frank, Gibson, Dunn & Crutcher, G. Edward Fitzgerald, Peter J. Arturo, Hillsinger & Costanzo, Michael V. Madigan, Edward A. DeBuys, Prindle, Decker & Amaro, Mary Kirk Hillyard, Thomas A. Steig, Leibman, Reiner, Nachison & Walsh, Craig Nelson, Selman, Breitman & Burgess and John S. Nowlton for Defendants and Respondents.

## OPINION

**EPSTEIN, J.**—The grandmothers of the plaintiff-appellants in this case ingested the drug diethylstilbestrol (DES) while pregnant with appellants' mothers. It is claimed that, as a result of the ingestion, appellants' mothers suffered disabilities that manifested themselves at various points after birth and that *their* children (appellants) suffered similar injuries when they were born. All but one of the appellants is a resident of the state of New York or New Jersey. The DES ingestion occurred in the state of New York. All of them pursued actions against defendant-respondents in that state. Each of the respondents manufactured DES during the period of the grandmothers' ingestion, and all but one does business in California. Only one appellant is domiciled in this state. New York State declined to recognize the preconception tort proffered by appellants. Having failed to succeed in New York, appellants sought relief in California.

The trial court dismissed the actions of the nonresident appellants under the doctrine forum non conveniens. (The action of the California appellant, Lara Ameen, was not dismissed.) We shall affirm the orders of dismissal. We do so because the only basis for bringing the actions in this state is the prospect that the law in California is more hospitable to their claims than the law of New York. We follow the decision in *Shiley Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 126 [6 Cal.Rptr.2d 38], in holding that this circumstance is not sufficient to compel a California court to entertain the nonresident appellants' suit.

One of the defendant-respondents, Emons Industries, Inc., does not do business in California. It sold DES during the period appellants' grandmothers ingested it, but its activities never subjected it to the general jurisdiction of this state. There is a basis to conclude that it is subject to special jurisdiction because of sales it made to physicians here during the relevant

period. But we agree with the trial court that there is no justification in the record for an assertion of jurisdiction on that account by any of the appellants because there is no showing or claim that Emons's activities in this state contributed to the injuries suffered by any of the appellants before us on this appeal.

We conclude, therefore, that the trial court did not err, and we affirm its orders.

### FACTUAL AND PROCEDURAL SUMMARY

DES is a synthetic estrogen compound, developed and marketed for the purpose of preventing miscarriage. It caused cancerous growths in many of the women who ingested it, and caused cancer and other disease to their children as a result of the *in utero* exposure. The tragic history of this drug, and the trail of injuries it has caused, is outlined in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 594 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 171], *Bichler* v. *Eli Lilly & Co.* (1982) 55 N.Y.2d 571 [450 N.Y.S.2d 776, 436 N.E.2d 182, 22 A.L.R.4th 171], *In re DES Cases* (E.D.N.Y 1992) 789 F.Supp. 552, and other places. We take it as established for purposes of the forum non conveniens and jurisdictional motions before the trial court, and here, that appellants' grandmothers ingested the drug while pregnant with appellants' mothers, and that their doing so ultimately manifested itself in injuries to appellants. We also assume that each of the respondents manufactured and sold DES during the 30-year period (1941-1971) that it was on the market.

The respondents were sued in New York, where each of them does business and is subject to the general jurisdiction of the state courts. Motions were brought challenging the viability of their causes of action, depending as they did on preconception torts. That is a theory generally rejected in New York. (*Albala* v. *City of New York* (1981) 54 N.Y.2d 269 [445 N.Y.S.2d 108, 429 N.E.2d 786].) All but one of the appellants were born in New York or New Jersey and are residents of one of those states. The exception, Lara Ameen, was born in California and is now a resident of this state. The New York trial court ruled for respondents, the intermediate court reversed, and the New York Court of Appeals—the highest court of that state—finally settled the issue. Framing the question as "whether the liability of manufacturers of [DES] should extend to a so-called 'third generation' plaintiff, the granddaughter of a woman who ingested the drug," the court answered in the negative and affirmed the trial court's grant of summary judgment in favor of the manufacturers. (*Enright* v. *Eli Lilly & Co.* (1991) 77 N.Y.2d 377 [568 N.Y.S.2d 550, 570 N.E.2d 198, 199]; cert. den., 502 U.S. 868 [116 L.Ed.2d 157, 112 S.Ct. 197].)

The appellants then filed actions against the same respondents in California. Respondent Eli Lilly & Co. moved to dismiss on forum non conveniens grounds. Each of the appellants other than Ms. Ameen, and all of the respondents, agreed to be bound (at the trial court level) by the ruling in the case of appellant Boaz. The trial court ruled that New York is a suitable, alternative forum, and that the balance of private and public factors did not favor retaining the action for trial in California. The case of each appellant—other than Ms. Ameen—was dismissed on forum non conveniens grounds. Insofar as the record shows, Ms. Ameen's case is proceeding against each of the respondents other than Emons. Emons moved separately to quash service and dismiss for lack of jurisdiction as to all of the appellants, including Ms. Ameen. Its motion was granted. The parties have agreed that applicability of the forum non conveniens doctrine shall be based on the factual and procedural history in the New York *Enright* decision.

A timely notice of appeal was filed on behalf of each of the appellants. The orders are appealable. (Code Civ. Proc., § 904.1, subd. (a)(3); all further statutory citations are to that code.) We granted a motion to consolidate the appeals,[1] and we now affirm.

## DISCUSSION

### I

### *Forum Non Conveniens*

■ "Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true." (Brandeis, J., in *Canada Malting Co., Ltd.* v. *Paterson Steamships, Ltd.* (1932) 285 U.S. 413, 422 [76 L.Ed. 837, 842, 52 S.Ct. 413].) A principal reason for not exercising jurisdiction, recognized by state and federal courts, is that the forum is not convenient. This doctrine, Latinized in the rubric "forum non conveniens," has a long history. (See *Piper Aircraft Co.* v. *Reyno* (1981) 454 U.S. 235, 248, fn. 13 [70 L.Ed.2d 419, 431, 102 S.Ct. 252].) It was crystallized by our national court in *Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501 [91 L.Ed. 1055, 67 S.Ct. 839] (see *Piper, supra,* at p. 248 [70 L.Ed.2d at p. 431]), and by the California court in *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577, 580 [268 P.2d 457, 43 A.L.R.2d 756].

[1]The respondents in each of the cases are designated as "Boyle & Co., et al." The appellants are: Enright (B076790), Smith (B076794), Mannion (B076789), Rubenstein (B076793), Boaz (B076776), Flanigan (B076792), Vitiello (B076779), Weinrub (B076784), Schwartz (B076787), Telsey (B076786), Ferri (B076782), O'Kyle (B076785), Murphy (B076788), Finazzo (B076778), Margolin (B076791), Ameen (B076777), Springer (B076783), and Weisman (B076795). Appellants Weinrub, Ferri and Murphy have filed dismissals of their appeals as to Eli Lilly & Co. only.

The principle "is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." (*Gulf Oil Corp.* v. *Gilbert*, *supra*, 330 U.S. at p. 507 [91 L.Ed. at p. 1062].) The rule is codified in section 410.30: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

The rule is "an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik* v. *Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14].) The defendant, as moving party, bears the burden of proof on the issue, and "[t]he granting or denial of such a motion is within the trial court's discretion, and substantial deference is accorded its determination in this regard." (*Id.* at p. 751; *Piper Aircraft Co.* v. *Reyno*, *supra*, 454 U.S. at p. 257 [70 L.Ed.2d at pp. 436-437].)

In the first high court case to fully review the doctrine, *Gulf Oil*, Justice Jackson set out private and public interests that should be considered by courts in exercising discretion in forum non conveniens motions. The private interests—those involving the litigants—include: the relative ease of access to sources of proof; availability of process to summon the unwilling, and the cost of obtaining attendance of the willing; the possibility of a view if that is a factor; enforceability of a judgment if one is obtained; "and all other practical problems that make trial of a case easy, expeditious and inexpensive." Public interest factors include court congestion; the burden of jury service imposed on members of a community having no relation to the litigation; holding trial in the view of persons concerned, rather than at a remote location; and the problems of the forum court untangling law of another jurisdiction. (330 U.S. at pp. 508-509 [91 L.Ed. at p. 1062].)

The *Piper* court applied these rules in a context similar to the one in this case: plaintiffs resisted the motion to dismiss because, they perceived, the law to be applied in the forum was more favorable than that which would be applied elsewhere. The case arose out of the crash of a small commercial aircraft, manufactured in Scotland by Piper. Several persons were killed in the crash, all Scottish residents. An action was filed in California on behalf of their estates. It was removed to federal court, then transferred to the Middle District of Pennsylvania, the principal location of the defendant manufacturer. That entity moved to dismiss the action in favor of litigation in Scotland. Scottish law afforded a remedy to the estates, but it was less

favorable than that available under applicable American law. Because of that circumstance, the Third Circuit reversed the forum non conveniens order of the trial court, granting the motion to dismiss. The United States Supreme Court reversed the circuit. (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at pp. 238-241 [70 L.Ed.2d at pp. 424-427].)

The court recognized the private and public interest factors articulated by Justice Jackson in *Gulf Oil* (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 241 [70 L.Ed.2d at pp. 426-427]), then dealt with the circumstance that forum-applied law was more favorable to the estates than the law of Scotland. "The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." (454 U.S. at p. 247 [70 L.Ed.2d at p. 430].) *Gulf Oil,* the court said, implicitly recognized that dismissal may not be denied solely because of the possibility of an unfavorable change in law if it is granted. (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 249 [70 L.Ed.2d at pp. 431-432].) "In fact, if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless." (*Id.* at p. 250 [70 L.Ed.2d at p. 432].) Were it otherwise, the court said, "American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts." (*Id.* at p. 252 [70 L.Ed.2d at p. 433], fns. omitted.)

The court held out one circumstance in which an adverse consideration of the remedy available in another jurisdiction might be pertinent. In the passage upon which our appellants rely, the court said: "We do not hold that the possibility of an unfavorable change in law should *never* be a relevant consideration in a *forum non conveniens* inquiry. Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice." (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 254 [70 L.Ed.2d at p. 435].)

A footnote appended to this passage helps to explain its meaning. The beginning of any inquiry must focus on whether an alternative forum exists. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction. [Citation.] In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the

subject matter of the dispute." (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 254, fn. 22 [70 L.Ed.2d at p. 435].) The court cited an example: *Phoenix Canada Oil Co., Ltd.* v. *Texaco, Inc.* (D. Del. 1978) 78 F.R.D. 445, in which the trial court had refused to dismiss in favor of an alternative forum in Ecuador since it was unclear whether a tribunal in that country would hear the case, and there was no generally codified Ecuadorean legal remedy for the unjust enrichment and tort claims asserted. (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 254, fn. 22 [70 L.Ed.2d at p. 435].)

The *Piper* opinion, to this point, was by a majority of five justices. A plurality of four justices then applied the *Gulf Oil* factors, and concluded the trial court was correct in granting the motion to dismiss. (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 255 et seq [70 L.Ed.2d at pp. 435-439].) Three justices agreed with the majority that a motion to dismiss cannot be defeated by showing that the substantive law that would be applied in another jurisdiction is more favorable than that of the forum, but would have ended the discussion at that point. The remaining two justices did not participate in the decision. (*Id.* at p. 261 [70 L.Ed.2d at pp. 438-439].)

*Stangvik,* the leading California case on the issue, also involved plaintiffs' resistance to a forum non conveniens motion because they expected more generous treatment than they would receive in the courts to which the case would be transferred. The case arose out of some of the many lawsuits brought on account of alleged failures, or anxiety over prospective failure, of Shiley heart valves. In this case, the valves allegedly had failed. The lawsuits were brought by spouses and children of persons in whom they had been implanted. The decedents and the plaintiffs were residents of Norway and Sweden, and the manufacturer's motion was to dismiss in the expectation that proceedings would be commenced in those countries. It agreed to waive any statute of limitations defense for the period the California actions were pending, and it gave assurances of amenability to process in Norway and Sweden and of its ability to satisfy any judgment that might be rendered. (*Stangvik* v. *Shiley Inc., supra,* 54 Cal.3d at pp. 749-750.)

The court concluded that "the fact California law would likely provide plaintiffs with certain advantages of procedural or substantive law cannot be considered as a factor in plaintiffs' favor in the forum non conveniens balance." (*Stangvik* v. *Shiley Inc., supra,* 54 Cal.3d at p. 754.) It took particular issue with an earlier Court of Appeal decision which had reached a contrary result. That holding was disapproved, based on *Piper.* (*Id.* at pp. 763-764.) The court also disapproved another Court of Appeal decision that had given "some weight" to the circumstance that the law of the other alternative forum (Australia) did not recognize strict liability recovery: "We

have concluded above that this factor may not be considered in the forum non conveniens balance." (*Id.* at p. 764.)

The court noted the *Piper* discussion of whether an unfavorable change of law should be given no consideration whatever, or only slight consideration, pointing out the difference in phrasing used by the court in discussing the issue. *Stangvik* concluded that "the fact that an alternative jurisdiction's view is less favorable to a litigant than the law of the forum should not be accorded *any* weight in deciding a motion for forum non conveniens provided, however, that some remedy is afforded." (54 Cal.3d at pp. 753-754, fn. 5, italics added.)

The meaning of the "no remedy at all" qualification in *Piper* was squarely addressed in *Shiley Inc.* v. *Superior Court, supra*, 4 Cal.App.4th 126. Like *Stangvik*, the *Shiley* case involved heart valves. The plaintiffs had had the valves implanted and were suffering anxiety over the prospect that they might fail. All of the plaintiffs were residents of other states. Shiley, the manufacturer, was a California corporation that fabricated the valves in this state. Of the 35 plaintiffs, 31 were residents of states that had rejected the "anxiety" theory of recovery. The other four were residents of states in which defense summary judgment motions were pending, challenging the theory of the action. Thus, for most of the plaintiffs the law in the states of their residence was adverse, and they hoped a California court would reach a different result. (The case of *Khan* v. *Shiley Inc.* (1990) 217 Cal.App.3d 848 [266 Cal.Rptr. 106], rejecting their theory, had not yet been decided.) The trial court denied motions to dismiss. (*Shiley, supra,* 4 Cal.App.4th at pp. 129-130.)

The court held that, "so long as there is jurisdiction and no statute of limitations bar, a forum is suitable where an action 'can be brought,' although not necessarily won. There is no balancing of interests in this decision, nor any discretion to be exercised." (*Shiley Inc.* v. *Superior Court, supra,* 4 Cal.App.4th at p. 132.) Citing the *Stangvik* discussion that a more favorable result under California procedural or substantive law cannot be considered in the forum non conveniens balance, the court concluded that " 'a showing that recovery would be more difficult or *even impossible* in a foreign forum does not demonstrate that the alternative forum is inadequate.' " (*Shiley Inc.* v. *Superior Court, supra,* 4 Cal.App.4th at p. 133, italics added.) Under *Stangvik,* "in determining the issue of a suitable place for trial, a court may not even consider the fact that an alternative forum does not recognize a cause of action which would be available to the plaintiff under California law." (*Shiley Inc.* v. *Superior Court, supra,* 4 Cal.App.4th at p. 133, quoting *Stangvik* v. *Shiley Inc., supra,* 54 Cal.3d at p. 764.)

The "no remedy at all" exception noted in *Piper* applies only in rare circumstances, such as where the alternative forum is a foreign country in which the courts are not independent, or due process is not applied. "The exception has never been applied to a sister state, and we decline to apply it here." (*Shiley Inc.* v. *Superior Court, supra,* 4 Cal.App.4th at pp. 133, 134, and fn. 4, at p. 134.) Because it did not appear that the trial court had considered proper factors in reaching its forum non conveniens decision, the case was remanded so that it could do so. (*Id.* at p. 135.)

■ Appellants make no effort to distinguish *Shiley,* as indeed they cannot. If anything, ours is an a fortiori case since the defendant in that case was a California resident and the allegedly tortious acts (manufacturing an unsafe heart valve and placing it in commerce) occurred in this state. Instead, they argue the case was wrongly decided because forum non conveniens cannot be applied unless there is some other forum willing to accept their theory of the case. We are not persuaded.

We agree that the issue of suitability of an alternative forum is a threshold determination, not part of the discretionary analysis. (*Stangvik* v. *Shiley Inc., supra,* 54 Cal.3d at p. 752, fn. 3.) But a forum is suitable if the defendant is amenable to process there, there is no procedural bar to the ability of courts of the foreign jurisdiction to reach the issues raised on their merits (or, if there is, the advantage of the bar—typically, the statute of limitations—is waived by defendants), and adjudication in the alternative forum is by an independent judiciary applying what American courts regard, generally, as due process of law. The fact that a plaintiff will be disadvantaged by the law of that jurisdiction, or that the plaintiff will probably or even certainly lose, does not render the forum "unsuitable" in this analysis. That, essentially, is the holding of *Shiley,* and is, we believe, the meaning of the "no remedy at all" statement in *Piper.*

If the language had any other meaning, trial courts would be driven to a construction of forum non conveniens that would deprive the doctrine of its force, a result rejected in *Piper.* (454 U.S. at p. 250 [70 L.Ed.2d at p. 432].) In *Stangvik,* for example, our Supreme Court rejected statements in Court of Appeal cases that had accorded "great weight" or "some weight" to the circumstance that the alternative forum did not recognize strict liability. (*Stangvik* v. *Shiley Inc., supra,* 54 Cal.3d at pp. 763, 764.) It is not uncommon that the only realistic basis for recovery against a product manufacturer is strict liability. In such a case, *Stangvik* precludes denying the motion to dismiss, even though denial would lead to total defeat of the plaintiffs' claims.

Appellants point to the Judicial Council comment to section 410.30, that "the action will not be dismissed unless a suitable alternative forum is

available to the plaintiff [citations]. Because of [this] factor, the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state [citations]." (Judicial Council of Cal., com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 410.30, pp. 492-493; *Stangvik v. Shiley Inc.*, 54 Cal.3d at p. 752.) This statement is taken directly from comment "c" to section 84 of the Restatement Second of Conflict of Laws. (See *Delfosse v. C.A.C.I., Inc.-Federal* (1990) 218 Cal.App.3d 683, 689 [267 Cal.Rptr. 224].) It has to do with the amenability of the defendant to the alternative forum, not with the probable or even certain outcome on the merits in that forum.

Indeed, no case cited by appellants has rejected dismissal on forum non conveniens grounds because the law of the alternate jurisdiction is adverse to plaintiffs. All cases that have rejected the doctrine on the basis of a deficiency in the alternate forum have done so because of a lack of jurisdiction over the defendant in that forum, an unwaived limitations bar (*Delfosse* is an example of this), or because the forum is in a foreign country in which a due process decision by an independent judiciary cannot be expected. (See the extensive collection of cases in Annot. (1987) 57 A.L.R.4th 973.)

In this case, there was at least one suitable forum. It was the state of New York. The circumstance that appellants sought relief in that jurisdiction first rather than last does not alter the result. New York was a proper forum— indeed, at least for the New York resident appellants, the most appropriate forum—for their cause. The fact that the highest court of that state rejected their theory does not mean that a California court must entertain their suit.[2]

We have no doubt that the trial court acted within the proper scope of its discretion in granting the motion on its merits. The *Gulf Oil* factors clearly point in that direction. Even were we to assume that modern advances in transportation and transmission methods relieve problems of witness availability and evidence production (see *Stangvik v. Shiley Inc., supra*, 54 Cal.3d at p. 762), the facts remain that none of the plaintiffs whose case was dismissed on forum non conveniens grounds is a California resident, that the alleged wrongful acts were committed in New York decades ago, and that

---

[2]Appellants argue that *Turpin v. Sortini* (1982) 31 Cal.3d 220 [182 Cal.Rptr. 337, 643 P.2d 954] indicates that a California court would favor the preconception tort theory they present. Respondents dispute that claim, relying on *Hegyes v. Unjian Enterprises, Inc.* (1991) 234 Cal.App.3d 1103 [286 Cal.Rptr. 85]. We need not and we do not address the merits of that controversy.

medical records and witnesses are more likely to be found there than here. Another decision, *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 113-115 [90 Cal.Rptr. 461], proposed 25 factors to guide judicial discretion in forum non conveniens cases. We will not labor that list here; it is sufficient to say that almost none of the listed factors favor respondents.

We mention, briefly, three factors often discussed in the reported cases. One is that the plaintiff's choice is to be accorded substantial weight. That factor derives most of its meaning from cases in which the plaintiff is a resident of the forum state, and in a position to claim its protection. (*Stangvik* v. *Shiley Inc.*, *supra*, 54 Cal.3d at p. 754.) As we have seen, none of the affected appellants in the forum non conveniens aspect of the case is a California resident. The second factor is the desire of the forum state to deter the tortious activity that forms the basis of the lawsuit. That factor, relating as it does to a drug that has been off the market for a quarter-century, is of minor efficacy here. To the extent that it has weight, it is sufficient to observe that the lawsuits by California plaintiffs against defendants who are subject to the general jurisdiction of our courts (all but one of the respondents named), and damages that may be recovered from those parties under the California market share rule, will provide sufficient deterrence. (See *Stangvik* v. *Shiley Inc.*, *supra*, 54 Cal.3d at p. 759; *Sindell* v. *Abbott Laboratories*, *supra*, 26 Cal.3d 588.)

Third, and finally, we have considered the choice of law problems implicated by these appeals. California follows the "governmental interest" approach in cases where the interests of more than one state are implicated. (*Reich* v. *Purcell* (1967) 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727].) The situs of the injury is no longer the beginning and end of the analysis, but it remains a relevant consideration. (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 168 [148 Cal.Rptr. 867, 583 P.2d 721].) The circumstances of this case—including the site of the tortious acts and their manifestation, and the lack of a significant California connection to those events—provide strong reasons to believe that a California court would look to the substantive law of New York. We need not and do not resolve that question. It is sufficient to point out that the fact that a California court would have to "untangle problems in conflict of law" is itself a basis to apply the doctrine of forum non conveniens. (*Gulf Oil Corp.* v. *Gilbert*, *supra*, 330 U.S. at p. 508 [91 L.Ed. at p. 1062].)

All this having been said, the most important reason for affirming the forum non conveniens decision of the trial court is that the torts alleged in this case have nothing to do with California. They were not committed here;

none of the affected appellants received her injury in this state; and none resides here. California was chosen for no other reason than it was believed to be hospitable to the theories appellants want to advance. Appellants could just as well have brought their action in Washington, West Virginia or Wyoming. Assuming that the national drug company respondents have a general presence there, the courts of those jurisdictions have as much, or as little, to do with the merits of the case as the courts of this state. We find no justification for California courts and juries to bear the burden of this litigation. The trial court did not err in granting respondents' forum non conveniens motion.

## II

### *Jurisdiction*

■ The doctrine of forum non conveniens tests whether a forum court should decline to entertain a lawsuit even though, arguably at least, it has jurisdiction to decide it. More fundamental is whether the court has jurisdiction. Only one of the respondents, Emons Industries, Inc., raised that issue. It did so by a motion to quash the return of service. After careful consideration of the moving and opposing proofs and argument, the trial court ruled that it lacked jurisdiction to proceed against Emons in this case, and granted the motion to quash.

We have reviewed the evidentiary showings, on which there is little dispute, and the applicable law. We conclude that the trial court ruled correctly.

■ The California long-arm statute reaches as far as the state and federal Constitutions allow. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].) Section 410.10 states simply that a "court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

"A California court may exercise judicial jurisdiction over nonresidents on any basis not inconsistent with the United States Constitution or the California Constitution. . . . In a significant line of cases beginning with *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310. . . , the United States Supreme Court has defined the parameters of the power of the states to compel nonresidents to defend suits brought against them in the state's courts. . . . The general rule is that the forum state may not exercise jurisdiction over a nonresident unless his relationship to the state is such as to make the exercise of such jurisdiction reasonable." (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264], citations omitted.)

■ Before examining decisions that describe the contours of state court personal jurisdiction over nonresident defendants, we briefly review the evidence of Emons's activities germane to the issue.

Emons's present business is the managing of railcars owned and leased by others. It is incorporated in New York, and its principal place of business is in Pennsylvania. The company is not and, apparently, has not been licensed to do business in California, and has had neither salespersons, employees or representatives here, nor any offices, bank accounts, records or property in this state.

Emons has not been in the pharmaceutical business since 1971. It had been in the business up to that date, through predecessor companies Grant Chemical Company, Amfre Drug Company, and Amfre-Grant, Inc. From 1949 to 1971 these companies distributed (according to Emons) or manufactured and distributed (according to appellants) DES. The company did not employ detailmen. Instead it depended upon advertising in selected professional magazines and professional journals, and targeted mailings of samples and brochures to obstetricians and gynecologists, especially those who wrote a large volume of prescriptions. This was done on a national scale. According to a report, California physicians accounted for 9 percent of Emons's sales of DES (second to New York, which accounted for 13 percent).

We review this factual setting against the applicable law. The jurisprudence on the power of a state court to exercise authority over nonconsenting nonresidents is generally considered to have begun with *Pennoyer* v. *Neff* (1878) 95 U.S. 714 [24 L.Ed. 565]. *Pennoyer* declared the principle that the judgment of a court lacking personal jurisdiction violated the due process clause of the Fourteenth Amendment. (*Id.* at p. 732 [24 L.Ed. at p. 572].) Due process in this context meant "a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights." (*Id.* at p. 733.) Beginning with *Pennoyer*, the high court has "relied on the principles traditionally followed by American courts in marking out the territorial limits of each State's authority." (*Burnham* v. *Superior Court of Cal., Marin County* (1990) 495 U.S. 604, 609 [109 L.Ed.2d 631, 638, 110 S.Ct. 2105].)

The rule and reasoning of *Pennoyer* are "attenuated but still valid." (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 88, p. 457.) The requirement that a court may exercise personal jurisdiction only on the basis of service within the state or consent led to a number of legal fictions designed to ameliorate the strictness of that standard. (*Burnham* v. *Superior Court of*

716

*Cal., Marin County, supra,* 495 U.S. at pp. 617-618 [109 L.Ed.2d at pp. 643-644.) Eventually, the fictions were obviated by what has become the "classic expression of the criterion" (*id.* at p. 609 [109 L.Ed.2d at p. 638]): the assertion of personal jurisdiction by a state court over a nonresident satisfies the due process clause so long as it does not violate " 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co.* v. *Washington, supra,* 326 U.S. at p. 316 [90 L.Ed. at p. 101], quoting from *Milliken* v. *Meyer* (1940) 311 U.S. 457, 463 [85 L.Ed. 278, 283, 61 S.Ct. 339, 132 A.L.R. 1357].) This is tested by the existence of "minimum contacts" between the nonresident defendant and the forum state. (326 U.S. at p. 316 [90 L.Ed. at p. 101].)

Stated another way, the forum state may not exercise jurisdiction over a nonresident unless the relationship of that person or entity to the state is such as to make the exercise of such jurisdiction reasonable. (*Internat. Shoe Co.* v. *Washington, supra,* 326 U.S. at p. 320 [90 L.Ed. at pp. 104-105]; *Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 147; Rest.2d Conflict of Laws, § 24.)

The court has adhered to the principles announced in *Internat. Shoe* on every pertinent occasion. (See, e.g., *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 291 [62 L.Ed.2d 490, 497-498, 100 S.Ct. 559]; *Keeton* v. *Hustler Magazine, Inc.* (1984) 465 U.S. 770, 774 [79 L.Ed.2d 790, 797-798, 104 S.Ct. 1473]; *Helicopteros Nacionales de Colombia, S.A.* v. *Hall* (1984) 466 U.S. 408, 414 [80 L.Ed.2d 404, 410-411, 104 S.Ct. 1868]; *Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 472 [85 L.Ed.2d 528, 540-541, 105 S.Ct. 2174]; *Asahi Metal Industry Co.* v. *Superior Court* (1987) 480 U.S. 102, 109 [94 L.Ed.2d 92, 102-103, 107 S.Ct. 1026]; *Burnham* v. *Superior Court of Cal., Marin County, supra,* 495 U.S. at p. 609 [109 L.Ed.2d at pp. 638-639].)

The minimum contacts rule serves two related functions: to protect non-resident defendants from the burden of litigating in a distant or inconvenient forum, and to ensure that state courts do not reach out "beyond the limits imposed on them by their status as coequal sovereigns in a federal system." (*World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. at p. 292 [62 L.Ed.2d at p. 498].)

Shortly after *Internat. Shoe,* the court came to recognize two distinct applications of these principles: general and specific personal jurisdiction. "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." And when the state "exercises personal jurisdiction over a defendant in a suit

arising out of or related to the defendant's contacts with the forum," it exercises "specific jurisdiction." (*Helicopteros Nacionales de Colombia, S.A. v. Hall, supra,* 466 U.S. at pp. 414, 415, fns. 8 and 9 [80 L.Ed.2d at pp. 410-411].)

Neither application fits the present case.

■  Where the activities of a nonresident defendant in the forum state may properly be described as "substantial . . . continuous and systematic" (*Perkins* v. *Benguet Consolidated Mining Co.* (1952) 342 U.S. 437, 447-448 [96 L.Ed. 485, 493-494, 72 S.Ct. 413]) or, as the same concept is phrased in the leading California decision, "extensive or wide-ranging" (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57]), "there is a constitutionally sufficient relationship to warrant jurisdiction for all causes of action asserted against him. In such circumstances, it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum." (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 147.) While minimum contacts suffice for specific personal jurisdiction, "the standard for general jurisdiction is considerably more stringent." (*Glater* v. *Eli Lilly & Co.* (1st Cir. 1984) 744 F.2d 213, 216; *Keeton* v. *Hustler Magazine, Inc., supra,* 465 U.S. at p. 779 [79 L.Ed.2d at pp. 800-801].)

■  Appellants do not specifically claim that Emons's activities in California ever satisfied the constitutional requirements for assertion of general jurisdiction. Instead, they argue that the general-specific dichotomy is of little value in the context of mass torts, and they point out that only one United States Supreme Court case—*Perkins*—has found that general jurisdiction was established in a particular case.

Whether the point is conceded or not, it is plain that general jurisdiction was not shown in this case. We shall assume that the relevant period is when Emons's predecessors were distributing DES, some 25 years ago, rather than just before Emons was served. As we have discussed, the predecessors' activities at that time, insofar as they affected California, were limited to targeted mailers to physicians and advertising, principally if not entirely in national medical or medically related publications. The firms had no personnel or representatives in California, maintained no offices, accounts or records here, and were not licensed to do business here.

This level of activity does not justify the assertion of general jurisdiction over a nonresident defendant. (See *Helicopteros Nacionales de Colombia, S.A.* v. *Hall, supra,* 466 U.S. at p. 416 [80 L.Ed.2d at p. 412] [Peruvian

entity's contacts with state consisted of sending chief executive officer there to negotiate contract, accepting checks drawn from an account in the state, buying helicopters and equipment in the state, and having its personnel undergo training there]; *Sklar* v. *Princess Properties International, Ltd.* (1987) 194 Cal.App.3d 1202, 1207 [240 Cal.Rptr. 102] [Bermuda corporation acted for Delaware hotel corporation in distributing advertising for hotels]; *Circus Circus Hotels, Inc.* v. *Superior Court* (1981) 120 Cal.App.3d 546, 567 [174 Cal.Rptr. 885] [acts of Nevada hotel corporation in advertising and maintaining "800" telephone number in California insufficient; cases collected]; *Seymour* v. *Parke, Davis & Co.* (1st Cir. 1970) 423 F.2d 584, 586 [drug manufacturer's only contacts with forum state were advertising and employing salesmen to solicit orders there]; *Glater* v. *Eli Lilly & Co., supra,* 744 F.2d at p. 216 [similar; DES case].)

The great majority of reported decisions in this area concern the sufficiency of minimum contacts to support specific personal jurisdiction. All of them have in common an element lacking in this case insofar as these appellants are concerned: the nonresident defendant's acts must have caused the forum-related injury of which the plaintiff complains. The United States Supreme Court recently summarized this principle by declaring that a nonresident and nonconsenting defendant may properly be sued in a forum state if the defendant "has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities," such as by delivering products into the stream of commerce with expectation that they will be purchased by consumers in the forum state, where the products subsequently injure forum consumers, or by publishing a libel in the forum state. (*Burger King Corp.* v. *Rudzewicz, supra,* 471 U.S. at pp. 472-473 [85 L.Ed.2d at p. 541], citations omitted.) Our Supreme Court has stated the requirement in similar terms: "If, however, the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum *in relation to the particular cause of action.*" (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at pp. 147-148, italics added.)

It is conceded that none of appellants' grandmothers, who ingested DES, did so in California. Nor did any of them acquire the product as the result of any of Emons's activities related to California. Indeed, as we have seen, none of them except Lara Ameen has any connection with this state. Ms. Ameen was born here and is a resident of California. But it is conceded that any DES-related affliction she suffers has nothing to do with any of Emons's activities related to California.

It follows that there is no basis for the assertion of general or specific personal jurisdiction by these appellants against Emons.

Appellants present a somewhat different argument. They urge that "the explosive developments in the jurisprudence of mass tort litigation," principles of reason and fairness that may be gleaned from the "halting and often inconsistent evolution of the law of personal jurisdiction," and the realities of modern business communications, information retrieval and the conduct of modern litigation, dictate a different approach. The evaluation, they argue, should be based on the concentration of expertise and experience in a handful of attorneys for plaintiffs and defendants, and such circumstances as an accumulated library of discovery and legal materials, common fact patterns, experts of national reputation spread throughout the country, and new methods for streamlining complex litigation. They place particular reliance on the decision of a federal district judge in New York, *In re DES Cases, supra,* 789 F.Supp. 552.

*In re DES Cases* was a diversity suit against defendants who denied any pertinent activity in the forum state, New York. The court found a basis to proceed, nevertheless. It reasoned that "by competing to establish a territorial niche within the national DES market, every manufacturer directly or indirectly benefited from the Commerce Clause to the federal Constitution and the laws of every state in the nation by participating in the national market for the generic good. . . . Under the federal Commerce Clause and the substantive law of *Hymowitz,* the United States constitutes a common economic pond that knows no state boundaries. A substantial interjection of products at any point of the national market has ripple effects in all parts of the market." (789 F.Supp. at p. 576.)

(The court's case reference is to *Hymowitz* v. *Eli Lilly & Co.* (1989) 73 N.Y.2d 487 [541 N.Y.S.2d 941, 539 N.E.2d 1069] cert. den. 493 U.S. 944 [107 L.Ed.2d 338, 110 S.Ct. 350]. That case adopted the market share approach to liability of drug manufacturers, similar to the California rule in *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d 588. The principal distinction is that, unlike *Sindell,* the New York rule does not provide for exculpation of defendants who can prove that their product was not responsible for a particular injury. [73 N.Y.2d at p. 512.].)

Emons distinguishes *In re DES Cases* because the decision concerned only New York plaintiffs. That is not a proper basis of distinction because it is not necessary that the plaintiff have "minimum contacts" in the forum state in order to assert jurisdiction over a nonresident defendant. (*Keeton* v. *Hustler Magazine, Inc., supra,* 465 U.S. at p. 779 [79 L.Ed.2d at pp. 800-801].)

The problem with the approach suggested by *In re DES Cases* is more fundamental. The trial judge was critical of the territorial nexus approach to

jurisdiction issues, and sought to sever "territorial notions" from more general concerns underlying the bases for assertion of jurisdiction. (789 F.Supp. at p. 580.) Whatever might be said of that approach in philosophical terms, it runs counter to United States Supreme Court decisions about the assertion of personal jurisdiction over nonresidents.

The court has recognized some relaxation in the limits on state jurisdiction imposed by the due process clause, based largely on the increasing amount of commerce across state lines and improvements in transportation and communication that have made it less burdensome for a party to defend itself in a state in which it engages in economic activity. (*McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 222 [2 L.Ed.2d 223, 225-226, 78 S.Ct. 199].) As a result, the requirements of personal jurisdiction over nonresidents evolved from the rigid rule of *Pennoyer* to the flexible standard of *Internat. Shoe.* "But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." (*Hanson* v. *Denckla* (1958) 357 U.S. 235, 251 [2 L.Ed.2d 1283, 1296, 78 S.Ct. 1228].)

The *World-Wide Volkswagen* case recognized this limitation. The court pointed out that it had "never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution." While, by the commerce clause, the framers provided that the nation was to be a "free trade unit," they "also intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment." (444 U.S. at p. 293 [62 L.Ed.2d at p. 499].)

The court offered the following summary: "Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." (444 U.S. at p. 294 [62 L.Ed.2d at pp. 499-500]; see also *Burnham* v. *Superior Court of Cal., Marin County, supra,* 495 U.S. at p. 609 [109 L.Ed.2d at p. 638] ["To determine whether the assertion of personal jurisdiction is consistent with due process, we have

long relied on the principles traditionally followed by American courts in marking out the territorial limits of each State's authority"].)

We have no warrant to jettison these principles in favor of an approach which recognizes no defined limits to the assertion of jurisdiction against any defendant whose national marketing somehow affects commerce in the forum state. (Cf. *United States* v. *Lopez* (1995) __ U.S. __ [131 L.Ed.2d 626, 115 S.Ct. 1624] [commerce clause does not authorize federal law punishing knowing possession of firearm in school zone, in part because, if it did, there would be no reasoned way to find a case to which the clause does not apply].)

While we conclude that the trial court was correct in granting Emons's motion to quash, we emphasize that nothing we have said should be taken to suggest a lack of specific personal jurisdiction over Emons in a case arising out of ingestion in California or by purchase or prescription in California of DES that Emons's predecessors may have placed into the stream of commerce.

### DISPOSITION

The orders appealed from are affirmed.

Woods (A. M.), P. J., and Klein (Brett), J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.