Filed 9/27/21  Almeida v. Olympusat CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DINA ALMEIDA, et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>OLYMPUSAT INC., et al.,<br><br>    Defendants and Respondents. | B303724<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV22597) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Hadsell Stormer Renick & Dai, Dan Stormer, Barbara Enloe Hadsell, Theresa Zhen, Brian Olney; Scott Wagner and Associates and Lindsey Wagner for Plaintiffs and Appellants.

Lathrop GPM, Laura Reathaford and Jeffrey A. Richmond for Defendants and Respondents.

—————————————

This case asks us to decide whether Florida or California is the better place to hear dueling, related lawsuits under the doctrine of forum non conveniens.

In April 2019, respondents Thomas Mohler (Mohler) and Olympusat, Inc. (Olympusat) filed suit in Florida against their former business partners, appellants Dina Almeida (Almeida) and Tristan Leo Star Films, Inc. (Tristan Leo Star), alleging violations of Florida law based upon trademark infringement and unlawful "kickback" payments from content providers who licensed material to Olympusat's networks.

In June 2019, appellants countersued respondents in California for, among other things, sexual harassment, sex discrimination, and tortious interference with business relationships.

Respondents moved to stay the California case under the doctrine of forum non conveniens, arguing that the parties' contract contained a forum selection clause mandating adjudication of contractual disputes in Florida. The trial court granted the motion and stayed the case while the parties pursued their suit in Florida.

Although the contractual forum selection clause does not dictate the outcome, there are many other private and public interests that point toward the efficacy of Floridian jurisdiction in the first instance. Not only did appellants consent to and affirmatively avail themselves of the Florida courts, but the two lawsuits are deeply factually and legally intertwined.

Under our limited standard of review, the trial court did not abuse its discretion in staying the California matter until the Florida case is resolved.

Accordingly, we affirm.

## FACTUAL BACKGROUND

Almeida is the sole owner and operator of Tristan Leo Star, a film company providing production, procurement, licensure, and distribution services.

In 2014, Tristan Leo Star contracted with Olympusat to license film content for Olympusat's stable of television networks. The contract was renewed twice, once in 2016 and again in 2018. Every iteration of the contract (the Agreement) contains a substantially similar forum selection clause, which provides that the parties "irrevocably consent" to jurisdiction of the Florida courts to resolve all disputes related to the Agreement.

In the California case, Almeida alleged that after Tristan Leo Star entered into the initial 2014 agreement, she was sexually harassed by Mohler, Olympusat's chief executive officer. This harassment was compounded by workplace retaliation, up to and including Olympusat's unilateral termination of Tristan Leo Star's contract. Mohler allegedly demanded that Almeida become an employee of Olympusat, threatening to financially ruin Tristan Leo Star if she did not comply. Almeida claimed to have made multiple complaints about Mohler's behavior to Olympusat's other executives, to no avail.

By early 2019, the relationship between the parties had deteriorated. When Mohler again threatened her business in February 2019, Almeida complained to Olympusat's general counsel. At the end of the month, Olympusat suspended its contract with Tristan Leo Star.

## PROCEDURAL BACKGROUND

On April 12, 2019, Olympusat sued appellants in Florida. Olympusat alleged that, while under contract, appellants violated

two Florida laws by obtaining illegal "kickback" payments from content providers who licensed material to Olympusat's networks. It also alleged that appellants were infringing on an Olympusat trademark.

Appellants moved to dismiss Olympusat's lawsuit for failure to state a claim. They also filed a countercomplaint alleging breach of contract and seeking an injunction prohibiting Olympusat from interfering with appellants' clients.

On June 27, 2019, appellants filed this lawsuit in California, alleging, inter alia, sexual harassment, retaliation, gender violence, and intentional infliction of emotional distress by respondents. They asked the court to void the Agreement and enjoin respondents from further attempts to enforce the allegedly unlawful non-compete clause.[1]

---

[1] Appellants specific claims included: (1) four violations of the California Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) for sexual discrimination, sexual harassment, retaliation, and failure to prevent discrimination and harassment; (2) two violations of the Unruh Civil Rights Act (Civ. Code, §§ 51, 51.9) for sexual discrimination and harassment; (3) gender violence in violation of the Ralph Civil Rights Act of 1976 (Civ. Code, § 51.7) and section 52.4 of the Civil Code; (4) sexual harassment and discrimination in violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1); (5) both intentional and negligent infliction of emotional distress; (6) negligent supervision and general negligence; (7) battery; (8) unfair competition; (9) civil conspiracy; (10) tortious interference with business relationships and interference with prospective economic relationships; (11) defamation; and (12) an unlawful non-compete clause.

4

Respondents moved to stay the case, arguing that the forum selection clause in the Agreement mandated resolution of any disputes between the parties in Florida.  The trial court stayed the California litigation, determining that the forum selection clause was mandatory.

Alternatively, putting aside the forum selection clause, the trial court found that Florida was both a suitable alternative forum and that a variety of interests favored conducting the litigation in Florida.  The court found that "the instant action is intertwined with a pending Florida action with overlapping issues and similar facts," causing a "risk of conflicting decisions and procedures if pending in different jurisdictions."

Appellants timely appealed.

## DISCUSSION

Under the equitable doctrine of forum non conveniens, a trial court has discretion to stay or dismiss "a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*); Code Civ. Proc., § 410.30, subd. (a).)

Forum selection clauses are typically honored unless enforcement would be unreasonable.  (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496.)  In deciding reasonableness, courts consider a variety of factors concerning the relationship of the parties, witnesses, and claims to the forum state, and, in a contract case, whether the parties themselves selected a particular forum.  (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471 (*Animal Film*).)

In selecting an appropriate forum, the trial court must determine whether the clause is mandatory or permissive. (*Animal Film, supra,* 193 Cal.App.4th at p. 471.)  Only if a forum

5

selection clause is permissive will the court evaluate whether other factors support moving the lawsuit to a different court. (*Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 358-360.)

## A.    The Contractual Forum Selection Clause

Appellants argue that the forum selection clause in the Agreement is permissive because it does not require the parties to settle their disputes in Florida.

"When, as here, no conflicting extrinsic evidence has been presented, the interpretation of a forum selection clause is a legal question that we review de novo." (*Animal Film, supra,* 193 Cal.App.4th at p. 471.)

" 'To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.' [Citation.]" (*Korman v. Princess Cruise Lines, Ltd.* (2019) 32 Cal.App.5th 206, 215.) A mandatory forum selection clause " 'ordinarily is "given effect without any analysis of convenience; the only question is whether enforcement of the clause would be unreasonable." ' " (*Ibid.*, quoting *Intershop v. Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 196.) However, if a clause merely memorializes a party's consent to jurisdiction in a particular forum and " 'does not expressly mandate litigation exclusively' " in that forum, the clause is permissive. (*Animal Film, supra,* 193 Cal.App.4th at p. 471.)

The operative forum selection clause states that Tristan Leo Star and Olympusat "irrevocably consent to the jurisdiction of the courts of Florida and to the convenience of Palm Beach County to decide all issues and disputes arising out of or related to this Agreement or the relationship of the parties hereunder."

We begin by pointing out that this clause is similar to one that this court has characterized as permissive. (See *Animal Film, supra*, 193 Cal.App.4th at pp. 470, 471-472 [concluding a forum selection clause was permissive where it stated that " 'the parties hereto submit and consent to the jurisdiction of the courts present in the state of Texas in any action brought to enforce (or otherwise relating to) this Agreement"], bold & capitalization omitted; see also *Berg v. MTC Electronics Technologies Co., supra*, 61 Cal.App.4th at p. 357 [same as to clause stating " '[t]he company . . . has expressly submitted to the jurisdiction of the State of California and United States Federal courts sitting in the City of Los Angeles, California, for the purpose of any suit, action or proceedings arising out of this [agreement]' "].)

Although the phrase "irrevocably consent" lends some credence to interpreting that clause as mandatory, the entire clause read in context stops short of *requiring* the parties to resolve their disputes in that forum. Significantly, the clause here contains none of the "language of exclusivity" that other courts have found to be mandatory. (See *Korman v. Princess Cruise Lines, Ltd., supra*, 37 Cal.App.5th at p. 215 ["All claims or disputes . . . *shall be litigated* before the United States District Courts for the Central District of California in Los Angeles"]; *Bushansky v. Soon-Shiong* (2018) 23 Cal.App.5th 1000, 1011 [" '*to the fullest extent permitted by law*, the Court of Chancery of the State of Delaware . . . *shall be* the *sole and exclusive* forum . . . for *any* derivative action' " or proceeding]; *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1672, fn. 4 [" '[A]ny appropriate state or federal district court located in the Borough of Manhattan, New York City, New York

shall have exclusive jurisdiction over any case of controversy arising under or in connection with this Agreement' "].)

Accordingly, the operative forum selection clause is permissive, and is therefore considered as just one factor among the many that are considered when analyzing a forum non conveniens motion. (*Animal Film*, *supra*, 193 Cal.App.4th at p. 472.)

## B. Forum Non Conveniens

In evaluating a forum non conveniens motion, "a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California." (*Stangvik*, *supra*, 54 Cal.3d at p. 751; *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436.)

### 1. *Suitability of the Alternative Forum*

An alternative forum is considered suitable if it has jurisdiction over the parties and no statute of limitations bars it from hearing the merits. (*Wang v. Fang* (2021) 59 Cal.App.5th 907, 918.) The relative advantage of the alternative forum's laws to either party's position is irrelevant. (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132 ["a forum is suitable where an action 'can be brought,' although not necessarily won"].) We exercise de novo review as to whether an alternative forum is suitable. (*Wang*, *supra*, at p. 918.)

As the trial court appropriately recognized, appellants have already submitted to jurisdiction in Florida, giving the state jurisdiction over both parties. Further, appellants have not identified any statute of limitations that could bar their lawsuit

8

from proceeding there.[2]  Florida is therefore a suitable forum for appellants' lawsuit.[3]

---

[2] While appellants argue that their discrimination and harassment claims might be "barred by the applicable statute of limitations [for] filing a claim with the Florida Commission on Human Relations," they elsewhere concede that the Florida statute requiring exhaustion of administrative remedies is inapplicable.  (Fla. Stat. Ann. § 760.10, subd. (1) (2015) [providing discrimination protections only to employees], § 760.11 (2020) [a discrimination claim must be filed with the commission within one year of the alleged violation].)

[3] Appellants also claim it would be unfair to require Almeida to litigate her statutory claims in Florida because many of them are unavailable to independent contractors under Florida law.  While this may be true, the analysis under the suitability prong focuses on whether a plaintiff has " ' "no remedy at all" ' " for her claims.  (*Wang v. Fang, supra,* 59 Cal.App.5th at p. 917.) This exception applies only in rare cases " ' "such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law." ' "  (*Ibid.*, quoting *Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 697.)  It has never been applied in disputes involving sister states and is plainly inapplicable here. (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 711 [in determining suitability, " 'a court may not even consider the fact that an alternative forum does not recognize a cause of action which would be available to the plaintiff under California law' "]; see *Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1530 [concluding that the plaintiff's loss of his California statutory remedy did not render Hawaii an unsuitable forum].)

2.  *Whether Private and Public Interests Favor Staying the California Litigation*

The remaining question is whether the trial court properly weighed the various private and public interests in staying the California litigation in favor of Florida jurisdiction.

"The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses."  (*Stangvik*, *supra*, 54 Cal.3d at p. 751.)

"The public interest factors include avoidance of overburdening California courts, protecting potential jurors who should not be called on to decide cases in which the local community has little concern, and weighing the competing ties of California and the alternate jurisdiction to the litigation."  (*Animal Film*, *supra*, 193 Cal.App.4th at p. 473.)

The grant or denial of a forum non conveniens motion "is within the trial court's discretion, and substantial deference is accorded its determination in this regard."  (*Stangvik*, *supra*, 54 Cal.3d at p. 751.)  Accordingly, "[w]e 'will only interfere with a trial court's exercise of discretion [regarding the balancing of interests aspect of a forum non conveniens motion] where [we find] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could have reasonably reached the challenged result.' "  (*Guimei v. General Electric Co.*, *supra*, 172 Cal.App.4th at p. 696, second bracketed insertion added.)

Many factors weigh in favor of Floridian jurisdiction.  We start with the forum selection clause which the parties agreed

10

would govern their contractual dispute.  (*Animal Film*, *supra*, 193 Cal.App.4th at p. 472.)  Moreover, by the time appellants had filed their complaint in California, they had already been named as defendants and served in a lawsuit filed by Olympusat in Florida.  They not only defended against Olympusat's lawsuit, but actively prosecuted a counterclaim.  This undercuts any argument that appellants will be burdened by litigating additional issues in Florida.

As the trial court recognized, the Florida and California suits are factually and legally intertwined.  Olympusat's premature, unilateral termination of the Agreement plays a key role in both lawsuits.  In Florida, appellants argue that they are owed damages as a result of the termination.  In California, appellants argue they are owed damages, in part, as a result of the termination—which they allege was the culmination of respondents' discriminatory, harassing, retaliatory conduct.

Respondents' Florida suit alleges that appellants received unlawful "kickback" payments from third parties at respondents' expense.  Appellants incorporate these allegations into their California suit, characterizing them as evidence of ongoing retaliation against Almeida for her refusal to submit to Mohler's harassment.  The circumstances surrounding the termination of the Agreement and the frayed relationship between the parties, as well as the veracity of respondents' claims about appellants' business practices, are central to both lawsuits.

As the trial court pointed out, appellants' claims in California for defamation, tortious interference with business relationships, and interference with prospective economic relationships all relate to their claims in their Florida countersuit

11

that Olympusat unlawfully interfered with Tristan Leo Star's clientele.

We note the inconsistency in appellants' contention, on the one hand, to void the Agreement in the California suit, whereas, in the Florida case, they seek damages and injunctive relief based upon a breach of that Agreement. The possibility of inconsistent decisions if both lawsuits proceed is not hypothetical.

Appellants point out a number of factors that favor jurisdiction in California: that Almeida is a California resident; that Tristan Leo Star, a Florida corporation, conducted much of its business in California;[4] that most of Mohler's alleged sexual misconduct took place in California; that Almeida identified six potential witnesses located in California; that Olympusat would not be overly burdened by litigating in a forum where it conducted a substantial part of its business; and California's pronounced interest in regulating sexual harassment and gender violence in the entertainment industry.

We agree that these factors raise important issues. However, the presence of countervailing factors does not establish an abuse of discretion. The relative strength or weakness of any particular factor is not fatal. Other relevant factors may well warrant granting or denying a motion to dismiss or stay on forum non conveniens grounds. (*Stangvik*, *supra*, 54 Cal.3d at p. 753 ["the private and public interest factors must be

---

[4] Appellants also rely on Tristan Leo Star's recent registration as a foreign corporation doing business in California. However, as the trial court noted, Tristan Leo Star did not so register until after the start of this litigation, and in any event, the company's registration is minimally relevant to assessment of the private and public interest factors.

applied flexibly, without giving undue emphasis to any one element"]; *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 860 ["the trial court retains a flexible power to consider and weigh all factors relevant to determining which forum is the more convenient"].)[5]

Based on its balancing of the numerous private and public interest factors, we cannot say that the trial court abused its considerable discretion in granting respondents' forum non conveniens motion to stay the California suit. (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1195 [under the abuse of discretion standard, "[a]s long as there is a reasonable or even fairly debatable justification for the ruling, we will not set it aside"].)

We emphasize that the trial court did not transfer and dismiss this suit, but rather ordered a stay of the California matter while the Florida case proceeds. The stay provides some protection, ensuring that appellants' action will remain viable in California in the event the action in Florida is rejected for any reason (*Wang v. Fang*, *supra*, 59 Cal.App.5th at pp. 921-922), or if

---

[5] Appellants argue the court erred in finding that "Olympusat has no management, offices, assets, or facilities of any kind in California and has no meaningful contacts with California," apparently in reliance on Mohler's declaration. We agree that the record shows Olympusat has at least two executive officers (its senior vice president of Hispanic owned and operated networks and its vice president of acquisitions) stationed in California offices, and had registered its principal California office at 3375 Barham Boulevard in Los Angeles. Given the trial court's numerous other findings, its erroneous reference to respondents' lack of contacts with California does not undermine the result.

there are unresolved issues once the Florida action concludes. (*Belnap Freight Lines, Inc. v. Petty* (1975) 46 Cal.App.3d 159, 163 [noting that the plaintiff may pursue any undecided claims after the selected forum has determined common issues].)

## DISPOSITION

The order is affirmed.  The parties shall each bear their own costs on appeal.

NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

*\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*