Filed 1/11/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ZHI AN WANG et al., | D076591 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2018-00063990) |
| SHIMIN FANG et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Randa Trapp, Judge. Affirmed in part; reversed in part.

Bradley & Gmelich, Barry A. Bradley, Lily Nhan and Dawn Cushman, for Plaintiffs and Appellants.

Skane Wilcox, Elizabeth A. Skane and Ronald J. Lauter, for Defendants and Respondents.

Plaintiffs Zhi An Wang, Yu Liu, Bo Xu, Yanhong Sun, Yong Li, Tao Chen, Lina Tao, Bin Qu, Qingjiang Li, Tao Jing, Xingchuan Wu, Jun Shi, Ke Zhang, Zhuo Xiao, and Yugang Xie (sometimes collectively, plaintiffs) appeal the order granting the motion of defendants Shimin Fang and his spouse, Juhua Liu (sometimes collectively, defendants), to dismiss plaintiffs' complaint on the grounds of forum non conveniens (motion). Fang and Juhua

Liu reside in San Diego County. Plaintiffs all reside in the People's Republic of China.

On appeal, plaintiffs contend the trial court erred in granting the motion because its finding that China was a suitable alternative forum for the litigation was not supported by substantial evidence. Plaintiffs alternatively contend that even if China is a suitable forum, the court abused its discretion by dismissing their action rather than merely staying it to ensure the case can proceed in China.

As we explain, we conclude substantial evidence supports the court's finding that China is a suitable forum. However, we agree with plaintiffs that in the interest of justice, the case should be stayed and not dismissed, with the court to retain jurisdiction over the matter pending the outcome of the case in China.

FACTUAL AND PROCEDURAL OVERVIEW[1]

*The Complaint*

In about 1994, Fang created a website in China that published articles and other content regarding purported examples of fraud, corruption, and bureaucratic inefficiency affecting the scientific and academic communities in China. In about 2005, Fang publicly criticized a urologist who claimed to have a developed a treatment for a rare disease. A year later, the urologist sued Fang. A Chinese court "awarded judgment against Fang who never accepted the court's judgment in that lawsuit." In 2010, Fang was attacked by individuals purportedly hired by the urologist as revenge for his public criticism of the doctor.

---

[1] This summary is primarily derived from the allegations in plaintiffs' complaint, many of which are based on "information and belief."

2

As a result of the attack, which Fang claimed was an attempt on his life, the complaint alleges he and attorney Jian Peng[2] established a business entity in China with a "form unknown" called "Personal Safety Foundation for Scientific Anti-Fraud Individuals" (Foundation). The Foundation, which also is a named defendant in this case,[3] is solely owned and operated by, and the alter ego of, defendants. The mission of the Foundation was to raise money to "protect individuals in scientific and academic fields, and in the general public, who may face bodily harm for exposing and criticizing acts of scientific and academic fraud" in China. Fang used the alleged assault against him to solicit donations in China.

Fang used the Foundation's website among other methods to obtain donations. Fang represented that donated funds "would be used solely for the protection of the personal safety of individuals engaged in anti-fraud activities"; that funds donated to the Foundation "would be made available to beneficiaries that included journalists, writers, researchers, and other individuals who exposed fraud and plagiarism in the scientific community, and who faced threats of harassment and physical harm as a result of making such criticisms"; and that any such awards could be used by recipients for the "purpose of protecting their personal safety."

Fang, as an inducement to obtain donations, "publicly represented that no monies collected to fund the FOUNDATION would be used to pay for personal living expenses or work expenses of any individual, and specifically represented to potential donors and the general public that Peng would not withdraw any money from the fund for either his own personal compensation

_____

[2]    Peng is not a party in this lawsuit.

[3]    The Foundation was not a party to the motion. It thus appears the Foundation has not yet appeared in the action.

3

or for Fang's own personal use."  Fang also represented to potential donors that a formal organization, with a board of directors, would be formed to manage the money raised by the Foundation.  However, the complaint alleges no such organization was formed, allowing "Fang and Defendants to use the funds without oversight."

During about an eight-year period, the Foundation collected donations from "several thousand donors" including plaintiffs.  The complaint alleges plaintiffs' contributions totaled a minimum of at least 6,000,000 RMB (i.e., Ren Min Bi, or the official currency of China, also referred to as the "yuan"), which equated to about $872,000.00 U.S. dollars.  The complaint includes the amounts each plaintiff donated to the Foundation.  These donations ranged from 3,000,000 RMB, or about $436,046 by plaintiff Bo Xu, to 10 RMB, or about $1.45 by plaintiff Bin Qu.  All plaintiffs other than Zhi An Wang are alleged to have made donations in some amount to the Foundation.

The complaint alleges the Foundation "has made no grants or other awards of . . . funds to any applicant at any time, other than to Fang, Juhua Liu, and their family members," despite receiving multiple requests for grants from "journalists (including [plaintiff Zhi An] WANG), scientists, researchers, and other 'whistleblowers' seeking to expose acts of fraud, corruption, and other unethical behavior in the scientific, academic, and government communities in China."  Defendants instead misused Foundation funds "for personal transactions" in contravention of the stated mission and purpose of the Foundation.

These personal transactions included purchasing in 2014 a single-family home in San Diego County valued in excess of $850,000; giving Peng about $159,900 in 2014 so he could purchase his own home in Beijing; buying two automobiles once defendants relocated to California; and paying "Peng's

4

unsuccessful defense against a lawsuit in China alleging fraud and misappropriation of Foundation funds by Peng, as well as Fang's defenses of multiple personal lawsuits in China"; among many other unauthorized expenditures of Foundation funds.

The complaint also alleges Fang defamed Zhi An Wang,[4] a "prominent investigative journalist," after he and others published several investigative reports "online and in print media" highlighting the "gross misuse" of Foundation funds by defendants. Fang allegedly made public statements "falsely accusing Wang of making inaccurate statements regarding Fang's misconduct"; and publicly disclosed Wang's home address, and otherwise verbally insulted him.

The complaint states causes of action against defendants for fraud; negligent misrepresentation; breach of contract and/or breach of the covenant of good faith and fair dealing; unfair competition; conversion; unjust enrichment; an accounting; and declaratory relief. The complaint further states this lawsuit is brought to "reimburse Plaintiffs for the significant sums they invested in the Foundation, which in reality was a scheme intended to defraud Plaintiffs and others." Plaintiffs in their prayer for relief sought general and special damages, as well as punitive damages, prejudgment interest, and attorney fees.

*Defendants' Motion and Plaintiffs' Opposition*

Defendants in their motion argued the complaint should be dismissed on the ground of inconvenient forum because the matter should be litigated in China, where all plaintiffs reside and where the Foundation is located. Defendants stated that they travel to China from "time-to-time, and they

---

[4] The complaint, however, notes plaintiffs are *not* seeking recovery on a defamation theory.

have no objection to submitting themselves to jurisdiction of the courts in China for the matters alleged in the complaint"; that they have authorized an attorney in China to accept service of process on their behalf; and that certain plaintiffs in the present case, including Bo Xu, already had litigated their reimbursement claims in China.

Fang in his declaration stated under penalty of perjury that neither he nor his wife Juhua Liu formed the Foundation, and neither of them "ever owned, operated, or controlled [it]"; that the Foundation is located in China and has no presence in California; that in China his agent for service of process and legal representative is attorney Shaohua Wang of the Beijing Jingyue law firm; and that Fang was a party to "several litigated cases in the courts of Beijing, China, including winning a defamation case against Zhi An Wang, the first-named plaintiff . . ., and a pending lawsuit in which [Fang was] suing the same plaintiff."

Shaohua Wang declared under penalty of perjury that he was a senior partner at "Beijing Jingyue Lawfirm" in Beijing; that since 1996, he has been licensed to practice law in China; that as such, he was "familiar with Chinese laws pertaining to jurisdiction of Chinese courts over civil actions"; and that based on his review of the complaint in this case, the "courts in China are available, and there are no legal impediments to the plaintiffs seeking damages in China against the defendants."

Shaohua Wang further declared that plaintiffs' lawsuit can be brought in China "because the underlying disputes relate to contracts between a Chinese foundation and its Chinese donors"; and that defendants Fang and Juhua Liu "have designated [him] as their legal representative in China, and they have authorized [him] to accept service of process on their behalf."

Defendants' motion also included the declaration of Zhiqiang Xu. His declaration was translated from Chinese into English by a member of the American Translators Association. Zhiqiang Xu declared he was the manager of the Foundation; the Foundation and all of its funds were located in China; and neither Fang nor Juhua Liu formed the Foundation, or owned, operated, or controlled it.

Zhiqiang Xu further declared the following plaintiffs already had litigated in China certain of the matters alleged in the complaint, and described the outcomes as follows:

* Yu Liu—complaint filed on November 16, 2015 against Peng, the former manager of the Foundation, in the "Chaoyang People's Court of Beijing"; the court on December 20, 2018 ordered Peng to reimburse Yu Liu in the amount of about $15,000;

* Tao Jing—complaint filed in December 2015 also against Peng in the Beijing Dongcheng District Court seeking the return of about $1,400; the court held a hearing on June 2, 2016, but had not yet rendered a decision;

* Yanhong Sun—complaint filed against Peng on June 22, 2016 also in the Beijing Dongcheng District court, seeking return of about $7,400; the court held a hearing on October 11, 2017, but had not yet rendered a decision; and

* Bo Xu—complaint filed against Peng and others in in the Chaoyang People's Court of Beijing; the court in a detailed, multipage judgment (translated into English and attached to Zhiqiang Xu's declaration) ordered Peng to return with interest about $443,000 to Bo Xu within seven days after the judgment became effective.

7

As relevant here,[5] plaintiffs in their opposition argued defendants failed to meet their burden to show China was a suitable forum for this lawsuit, claiming defendants failed to offer any substantive analysis or argument of Chinese law on the issue of suitability. Plaintiffs also argued defendants failed to explain the significance of the prior lawsuits in China involving certain plaintiffs and the Foundation, and how such lawsuits were germane to enforce in this action a potential judgment against defendants and their assets in California. Plaintiffs also filed myriad objections to portions of the declarations of Fang, Shaohua Wang, and Zhiqiang Xu, including on the grounds of hearsay, lack of foundation, and improper expert opinion.[6]

Defendants in reply argued China was a suitable forum to resolve plaintiffs' complaint. They reiterated that the cases of plaintiffs Bo Xu and Yi Liu *already* had been resolved by Chinese courts, as noted in Zhiqiang Xu's declaration and the attachment thereto. Defendants further noted these plaintiffs were the two biggest donors identified in the complaint, as their collective donations comprised about 97 percent of those listed by plaintiffs. Defendants also argued China was a suitable forum because the "defendant foundation, its donations, its donors, its managers, and its transactions are

---

[5]    In the trial court, plaintiffs also opposed the motion by arguing the private and public interests favored keeping the action in California. Plaintiffs, however, have abandoned this argument on appeal.

[6]    From the record, it does not appear the court ever ruled on plaintiffs' objections. Nor do plaintiffs' raise this issue on appeal. We thus deem the issue forfeited. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 306–307, fn. 4 [noting the failure to request a ruling on written evidentiary objections waives the objections and forfeits the issue for appeal].)

all in China"; and therefore, that this case was "a matter for the courts in China, to be resolved under Chinese law."

In support of their reply, defendants submitted a supplemental declaration by Fang in which he declared under penalty of perjury that he and Juhua Liu had purchased their home in San Diego County in October 2013, as shown by an attached buyer's settlement statement; and that Bo Xu had not made his donation to the Foundation until January 13, 2014, as referenced by the Chinese court in the (translated) civil judgment attached to Zhiqiang Xu's declaration.

Fang further declared that he had independently confirmed that Yu Liu also had obtained a judgment for the return of his donation, as previously attested to by Zhiqiang Xu. Fang stated the judgment rendered by the Beijing court in favor of Yu Liu was a matter of public record in China. A copy of the judgment was attached as an exhibit to Fang's supplemental declaration.[7]

Plaintiffs responded to defendants' reply by submitting the declarations of Chuan-Guo Xiao, M.D. and Ning Tang. Chuan-Guo Xiao in his declaration "certif[ied]"[8] to obtaining a money judgment of 30,000 RMB against Fang,

---

[7]    The Yu Liu judgment is in Chinese. Defendants requested additional time to submit a certified English translation of the judgment. The record does not include a translated version, however.

[8]    Chuan-Guo Xiao's declaration was not made under penalty of perjury.

9

which this individual claimed he had been unable to enforce in China because Fang had transferred all of his assets to the United States.[9]

Ning Tang declared she was a Chinese attorney familiar with Chinese jurisdiction laws in civil cases and was the attorney in China for certain plaintiffs in the instant action. She opined Fang was not subject to a Chinese court's jurisdiction because he was merely a "beneficiary" under the "donation contract" between Peng and each person who made a contribution to the Foundation. Ning Tang stated she represented Yanhong Sun, a plaintiff in the instant case, in China in an action against Peng. She further stated the Chinese court in that lawsuit had refused to add Fang as a defendant.[10]

Ning Tang also stated that it was "impossible" to file an action against Fang in China alleging "civil fraudulent conduct" (emphasis in original omitted); that unlike in California, punitive damages were not recoverable in China for such misconduct; and that it would be "very hard" to enforce in the United States any judgment rendered against defendants by a Chinese court.[11]

*Court's Ruling*

At the May 31, 2019 oral argument, plaintiffs relied on the declaration of Ning Tang in arguing China was not a suitable alternate forum for this

---

[9] We note that many of the same objections plaintiffs made to defendants' evidence in support of the motion would *also* apply to the evidence proffered by plaintiffs in opposing that motion. Which brings to mind the axiom, "What is sauce for the goose is sauce for the gander."

[10] See footnote 9, *ante*.

[11] The day before oral argument on the motion, plaintiffs submitted the declaration of Haifeng Sun also in response to defendants' reply. The court, however, refused to consider this declaration, deeming it untimely.

10

action because the "Chinese court[s had] already said that they do not have jurisdiction over Mr. Fang." Plaintiffs noted that Ning Tang was counsel of record for three of the plaintiffs in the instant case, who had actions against Peng pending in China; and that because Peng was the "principal" and "architect" of the Foundation, a Chinese court had already ruled Fang was not subject to its jurisdiction.[12]

At the very end of oral argument, plaintiffs' counsel requested the court stay and not dismiss the case if the court was inclined to follow its tentative and grant the motion. The court refused to consider this request, instead responding, "Counsel, you've extended your time. Thank you very much."

After taking the matter under submission, the court in its June 12, 2019 minute order confirmed its tentative. As relevant here, the court found China was a suitable alternative forum. Specifically, the court found that Fang and Juhua Liu in this case had agreed to submit to jurisdiction in China; and that other cases involving certain plaintiffs seeking reimbursement of their donations to the Foundation had been decided and/or were still pending in China. The court thus dismissed the action.

## DISCUSSION

A. *Guiding Principles*

Defendants' motion was based on the common law doctrine of forum non conveniens, codified in Code of Civil Procedure[13] section 410.30. Subdivision (a) of this statute provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an

---

12     See footnote 9, *ante.*

13     Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

11

action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

Forum non conveniens is "an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).) "In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternative forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California." (*Ibid.*) "Only if it finds the alternative forum suitable does the court proceed to the discretionary exercise of balancing the private interests of the litigants and the interests of the public in retaining the action in California." (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 436 (*Cemwood*).)

"That the law is less favorable to the plaintiffs in the alternative forum, or that recovery would be more difficult if not impossible, is irrelevant to the determination whether the forum is suitable unless 'the alternative forum provides no remedy at all.'" (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696 (*Guimei*), quoting *Stangvik*, *supra*, 54 Cal.3d at p. 764.) "The 'no remedy at all' exception applies 'only in "rare circumstances," such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law.'" (*Guimei*, at p. 697 [refusing to find the " 'no remedy at all exception' " applicable to the transfer of an action to China].)

Generally, an alternative forum is suitable if there is jurisdiction and no statute of limitations bar to hearing the case on the merits. (See

12

*Cemwood, supra*, 87 Cal.App.4th at pp. 436–437; *Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132 (*Shiley*).) "[A] forum is suitable where an action 'can be brought,' although not necessarily won." (*Shiley*, at p. 132; see *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 711 (*Boaz*) [recognizing a "forum is suitable if the defendant is amenable to process there, there is no procedural bar to the ability of courts of the foreign jurisdiction to reach the issues raised on their merits (or, if there is, the advantage of the bar— typically, the statute of limitations—is waived by defendants), and adjudication in the alternative forum is by an independent judiciary applying what American courts regard, generally, as due process of law"].)

"On a motion for forum non conveniens, the defendant, as the moving party, bears the burden of proof. The granting or denial of such a motion is within the trial court's discretion, and substantial deference is accorded its determination in this regard." (*Stangvik, supra*, 54 Cal.3d at p. 751.) However, the initial determination of whether the alternate forum is suitable is nondiscretionary. (*Cemwood, supra*, 87 Cal.App.4th at p. 436; *Shiley, supra*, 4 Cal.App.4th at p. 132.) The question of whether the alternative forum is suitable is a legal question we review de novo. (*Cemwood,* at p. 436.) We review a trial court's findings as to whether a suitable alternative forum exists for substantial evidence. (See *Stangvik, supra*, 54 Cal.3d at p. 754.)

Substantial evidence is evidence of ponderable legal significance. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873.) "The trial court, as fact finder, has the duty to weigh and interpret the evidence and draw reasonable inferences therefrom. [Citation.] We cannot reweigh the evidence or draw contrary inferences. [Citations.] We presume the trial court found every fact and drew every reasonable inference necessary to support its determination. [Citation.] We cannot reject evidence accepted by the trial court as true

13

unless it is physically impossible or its falsity is obvious without resort to inference or deduction. [Citation.]" (*Guimei, supra,* 172 Cal.App.4th at pp. 698–699.)

B. *Analysis*

As plaintiffs point out in their moving papers, defendants did not stipulate to the jurisdiction of the courts in China. We note, however, there is no requirement in section 410.30 that a defendant stipulate to the alternative forum's jurisdiction as a condition to obtaining relief under this statute. In our view, a defendant's agreement in a sworn declaration to be bound to the jurisdiction of a forum outside California is sufficient.

Plaintiffs also contend the court erred in granting defendants' motion because only Fang expressly agreed to submit to jurisdiction in China. However, Fang in his declaration stated under penalty of perjury that his wife Juhua Liu also agreed to be subject to the jurisdiction of the Chinese courts. In addition, Shaohua Wang in his declaration stated under penalty of perjury that he was defendants' legal representative in China and that both defendants had authorized him to accept service on their behalf. (See *Boaz, supra,* 40 Cal.App.4th at. p. 711 [recognizing a "forum is suitable if the defendant is amenable to process there"].) We thus independently conclude there is substantial evidence in the record to support the finding that defendants have voluntarily consented to the jurisdiction of the Chinese courts. (See *Stangvik, supra,* 54 Cal.3d at p. 751; see also *Guimei, supra,* 172 Cal.App.4th at pp. 698–699.)

Moreover, there is ample record evidence to support the finding that China provides plaintiffs with an adequate remedy. (See *Guimei, supra,* 172 Cal.App.4th at p. 696 [noting whether the alternative forum is less favorable to the plaintiffs is "irrelevant" to suitability unless the alternative forum

14

" 'provides no remedy at all' "].)  Indeed, the record shows there already has been substantial litigation in China involving some of the parties in this lawsuit, including plaintiffs Tao Jing, Yanhong Sun, Bo Xu, and Yu Liu, the latter two being the two largest donors identified in the complaint (i.e., about 97 percent of the total donations listed by plaintiffs).  As summarized *ante*, both Bo Xu and Yu Liu have successfully litigated in China the return of the donations they made to the Foundation.

Plaintiffs also contend the court erred in granting the motion because defendants never agreed to waive any statute of limitations potentially available to them to bar plaintiffs' action in China.  Plaintiffs rely on *Stangvik* and its progeny to support this claim.  Plaintiffs therefore contend the court's suitability finding is not supported by substantial evidence.  Defendants respond that, although it was their overall burden to establish suitability (see *Stangvik*, *supra*, 54 Cal.3d at p. 751), it was up to plaintiffs to show their action in China would be barred by any applicable statute of limitations, which burden plaintiffs failed to carry.

We need not resolve which party had the burden as it pertains to the waiver of any potential statute of limitations applicable in China.  We independently conclude under the unique facts of this case that there is sufficient evidence to show there is "no procedural bar" to the ability of the courts in China to hear and decide this case, which at its core seeks reimbursement of plaintiffs' donations to the Foundation as noted *ante*.  (See *Boaz*, *supra*, 40 Cal.App.4th at p. 711.)

Indeed, as we have just noted, plaintiffs Tao Jing, Yanhong Son, Bo Xu, and Yu Liu have already been in litigation in China regarding the donations they made to the Foundation.  In addition, defendant Fang has been in litigation with plaintiff Zhi An Wang in China, including in an ongoing case

15

ostensibly regarding certain allegations in the complaint, in which plaintiffs contend that Fang defamed Wang and disclosed his personal information as payback for articles Wang wrote and posted about Fang and the Foundation. Because of the litigation between the parties in China regarding certain of the claims and allegations in the complaint, we conclude substantial evidence supports the finding that China is a suitable forum for plaintiffs' action.

Our decision neither contravenes section 410.30 nor our high court's decision in *Stangvik*. The Judicial Council comment to section 410.30 provides in part, "[T]he action will not be dismissed unless a suitable alternative forum is available to the plaintiff [citations]. Because of . . . [this] factor, the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be *barred* by the statute of limitations, *unless* the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state [citations]." (Judicial Council com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 410.30, pp. 492–493, italics added.)

Thus, the statute of limitations, and any waiver thereof, in the alternative forum only becomes an issue *if* the action in that forum *would be barred*, as opposed to *might be barred*. (See *Boaz*, *supra*, 40 Cal.App.4th at p. 711 [recognizing a forum is suitable if "there is no procedural bar to the ability of courts of the foreign jurisdiction to reach the issues raised on their merits (or, if there *is* [as opposed to *might be*], the advantage of the bar— typically, the statute of limitations—is waived by defendants (italics in original added)"].) Here, our record is silent on this issue; there is no evidence to show plaintiffs' lawsuit against defendants seeking reimbursement of their donations *would be barred* in China. To the contrary,

16

as we have found there is substantial evidence to show otherwise, based on the number of actions in China seeking relief on certain claims and allegations in plaintiffs' complaint.

*Stangvik* also does not compel a different result. There, the defendants moved to stay or dismiss the actions of two families brought on behalf of their respective decedents who received what plaintiffs claimed were defective heart valves implanted in Norway and Sweden. (*Stangvik*, *supra*, 54 Cal.3d at pp. 749–750.) The trial court granted the motion, stayed the actions, and "retained jurisdiction to make such further orders as might become appropriate." (*Id.* at p. 750.)

In finding it was "clear" that Norway and Sweden were suitable forums to hear the cases (*Stangvik*, *supra*, 54 Cal.3d at p. 752), our high court recognized the defendants had agreed to submit to jurisdiction in Norway or Sweden "as well as to the tolling of the statute of limitations during the pendency of the actions in California." (*Ibid*.) As noted by the *Stangvik* court, the trial court there also imposed myriad other requirements on the defendants as a condition to granting their motion under section 410.30, including: complying with discovery orders of the Scandinavian courts; agreeing at the defendants' expense to make past and present employees reasonably available to testify in Sweden and Norway; agreeing to make documents in the United States available for inspection in Sweden and Norway; and agreeing to pay any final judgments rendered in the Scandinavian actions. (*Stangvik*, at p. 750, fn. 2.)

We find *Stangvik* factually inapposite here. Unlike the situation in the instant case, there was no evidence in *Stangvik* that certain of the parties had been previously involved in litigation in the plaintiffs' home countries

17

involving one or more claims and/or allegations that were included in the plaintiffs' actions against the defendants in California.

In addition, we note *Stangvik* did not hold that a section 410.30 motion *required* the moving party to waive the statute of limitations as a condition to obtaining relief under the statute. Instead, the case merely pointed out that doing so, in addition to submitting to the out-of-state forum's jurisdiction, "clear[ly]" satisfied the suitability prong before turning to what the court deemed to be the "second and more difficult question" in its analysis, namely the private interests of the litigants and the interests of the public in keeping the action in California. (*Stangvik*, *supra*, 54 Cal.3d at p. 752.) In our view, a moving party's agreement to waive any statute of limitations in an out-of-state forum is a factor, perhaps an important—and maybe a deciding—factor, but in the end, only a factor, to be considered by a trial court in determining whether the alternative forum is suitable for purposes of section 410.30.

But this does not end our analysis.

Because defendants did not agree to waive or toll the statute of limitations during the pendency of the California action, we conclude the court abused its discretion and thus erred in dismissing plaintiffs' complaint, as opposed to merely staying the action pending the outcome of the case in China. By staying the case and retaining jurisdiction to "make such further orders as might become appropriate" (see *Stangvik*, *supra*, 54 Cal.3d at p. 750), the court can ensure plaintiffs' action will remain viable in California in case their action in China is rejected for any reason. (See § 410.30, subd. (a) [ensuring the granting of a motion under section 410.30 is based on "conditions" that are "just"].)

18

## DISPOSITION

The court's order granting defendants' motion for forum non conveniens under section 410.30 is modified such that the case is stayed and not dismissed. This will allow the court to retain jurisdiction over the matter in case plaintiffs' action is rejected in China. In all other respects the order is affirmed. The parties are to bear their own costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.

19