Filed 1/14/25  Seryani v. American University of Madaba CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BENJAMIN SERYANI et al., | |
| Plaintiffs and Appellants, | E080781 |
| v. | (Super.Ct.No. CIVDS1925212) |
| AMERICAN UNIVERSITY OF MADABA et al., | OPINION |
| Defendants and Respondents. | |
| BENJAMIN SERYANI et al. | E081273 |
| Plaintiffs and Appellants, | |
| v. | |
| THE ROMAN CATHOLIC BISHOP OF SAN BERNARDINO et al., | |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez,

Judge.  Affirmed in part and reversed in part.

Decker Law, James D. Decker, and Griffin Schindler; Law Office of Robert J. Spitz and Robert J. Spitz for Plaintiffs and Appellants.

Fullerton, Lemann, Schaefer & Dominick, Wilfrid C. Lemann, and David P. Colella for Defendants and Respondents His Excellency Archbishop Pierbattista Pizzaballa, American University of Madaba Company, American University of Madaba, American University of Madaba, Inc., Latin Patriarchate of Jerusalem, Latin Patriarchal Vicariate Ecclesiastical Court, Mukawer Castle for Education Company, His Beatitude Fouad Twal, His Excellency Archbishop William Shomali, and The Roman Catholic Bishop of San Bernardino.

Offit Kurman and Michele B. Friend, for Defendant and Respondent The Roman Catholic Archbishop of Los Angeles.

This case arose out of a project to build a new Catholic university in Amman, Jordan. After substantial discovery and a two-day evidentiary hearing, the trial court granted respondents' motion to quash service of summons and dismiss them from this lawsuit. The court found the nonresident respondents lacked sufficient contacts with California to be subject to its general jurisdiction, and it declined to exercise specific jurisdiction over them arising from "contracts . . . formed in Jordan, between parties in Jordan, to be performed in Jordan, with the alleged breaches occurring in Jordan." We find no fault with these rulings.

The court also dismissed two California respondents without providing a reason but apparently under the doctrine of forum non conveniens. In addition, the court

dismissed one plaintiff, an Indiana limited liability company with a California address, finding it was "not a viable plaintiff" because its California registration as a foreign corporation had been cancelled. None of these parties should have been dismissed. We therefore affirm the judgment in part and reverse in part.[1]

FACTS

Plaintiffs and appellants are an individual, Benjamin Seryani, and Synergy Select One, LLC (Synergy), which was formed in Indiana in July 2012 and registered in California as a foreign LLC in September 2013. Seryani is the sole member of Synergy. Seryani filed a certificate of cancellation for Synergy in California in December 2014. He filed a certificate of dissolution for Synergy in Indiana the same month.

Plaintiff's complaint initially named 15 defendants, and two more parties were later added as Doe defendants. Of the first 15 defendants, nine are respondents here: His Excellency Archbishop Pierbattista Pizzaballa, American University of Madaba Company, American University of Madaba, American University of Madaba, Inc., Latin Patriarchate of Jerusalem, Latin Patriarchal Vicariate Ecclesiastical Court, Mukawer Castle for Education Company, His Beatitude Fouad Twal, and His Excellency Archbishop William Shomali.[2] The two Doe defendants—The Roman Catholic Bishop

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Where defendants were sued erroneously under a different name, we have used the name as later corrected. The defendants in the underlying action who are not party to this appeal are The Holy See a/k/a/ Vatican City State a/k/a/ Vatican Nation, Vatican Foundation St. John the Baptist, Honorable Judge Fr. Dr. Majdi Siryani, His Excellency

*[footnote continued on next page]*

3

of San Bernardino and The Roman Catholic Archbishop of Los Angeles—are also respondents.

According to plaintiffs' complaint, in 2012 defendants induced Seryani to leave his "successful career in America as a Hotel Regional Manager" for what he believed to be a project to "promot[e], develop[] and construct[] an internationally prominent University in his home country of Jordan that would be a beacon of education and religious harmony for the Catholic Church in the Middle East." Seryani was "assured" that this project, the American University of Madaba, "would be fully funded" with "adequate financial resources from the Vatican," and that he "would have full control over the application of these resources in his oversight position."

As alleged, the university project involved multiple contracts, including a "Management Agreement," effective October 1, 2012; a "Food and Beverage Agreement," dated October 1, 2013; a "Transportation Agreement," dated April 1, 2014; and a set of "Project Contracts" to "perform a series of campus development projects, make certain equipment purchases, and advance certain funds for the benefit of the Defendants." We will briefly discuss each of these items.

The Management Agreement is for "management services" between American University of Madaba—a company organized under Jordanian law with its head office in Amman, Jordan, but registered in New Hampshire, with Twal signing on its behalf—and Synergy and its Jordanian subsidiary, with Seryani signing on its behalf. By

---

Archbishop Bishara Maroun Lahham, His Excellency Archbishop Antonio Franco, and Cardinal Secretary of State His Eminence Pietro Parolin.

4

"management services," it seems the parties meant things like logistics and other "back-up" services like building management, public safety, and landscaping. When the Management Agreement was executed, Synergy had not yet registered in California as a foreign LLC, but it had an address in Perris, California. The Management Agreement has a choice of law clause selecting Indiana law, and says it was executed at "The American University of Madaba" in Jordan.

The Food and Beverage Agreement is a commercial real estate lease between The American University of Madaba—again, Twal is identified as that entity's representative—and Seryani as an individual "and/or His corporation" Synergy and its Jordanian subsidiary. The leased properties are locations in and around the university's campus in Jordan, to be used as outlets for sale of food and beverages, as well as other "amenities and stationary." The agreement's choice of law clause designates "Jordanian Government Law" as its governing law.

The Transportation Agreement is between Seryani and "The Latin Patriarchate of Jerusalem, represented by His Beatitude Patriarch Fouad Twal." The signed Transportation Agreement is in Arabic, but a translation is included in our record. The agreement relates to transportation services to be provided to "students and employees at the American University of Madaba." The agreement includes an arbitration clause, requiring any dispute to be referred to arbitration under "Jordanian Arbitration Law."

The Project Contracts were not attached to the complaint, which alleges few details about them. The "campus" intended to benefit from the "campus development

projects" in these alleged contracts obviously is the American University of Madaba's campus in Jordan.

Along with these contracts, according to plaintiffs, in July 2013 Twal executed a power of attorney authorizing Seryani to act on Twal's behalf on matters relating to the American University of Madaba. This "General Power of Attorney" is in Arabic, but a translation is included in our record. The parties disagree, it seems, about the scope of the powers granted by the power of attorney. That is not, however, a dispute that we will have to resolve here.

Plaintiffs allege that in 2014 Seryani "discovered" the university project was really a "massive money laundering scheme." Plaintiffs' theory is defendants "exploit[ed]" the "charitable deduction status of the Roman Catholic Church" and the defendant entities, as well as the Vatican's sovereign immunity "that prevents the tracing of international wire transactions" to launder donations from corporate entities in the United States to defendants. When plaintiffs "refused to participate," their "long term contracts were suspended and their property in Jordan was confiscated," and Seryani was "forced to leave Jordan and return to his home in California under threat of his arrest should he ever return to Jordan."

In January 2016, plaintiffs entered into a settlement agreement with the American University of Madaba relating to several expressly identified contracts for services provided in Jordan.[3] Those contracts do not include the Management Agreement, the

---

[3] Both the original Arabic agreement and an English translation are in our record.

6

Food and Beverage Agreement, or the Transportation Agreement.[4] We cannot determine from our record whether the identified contracts, which do not appear in our record, are among the "Project Contracts" alleged collectively in plaintiff's complaint, whether they implement specific aspects of the Management Agreement, or whether they are something else altogether. The settlement agreement provides for plaintiffs to be paid 88,213 Jordanian dinars.

In February 2016, plaintiffs filed suit against several parties in New Hampshire, alleging claims related to the university project, including specifically the Management Agreement and Project Contracts. In September 2016, the New Hampshire trial court found that it lacked personal jurisdiction over the Latin Patriarchate of Jerusalem and granted its motion to dismiss on that ground. Our record does not reflect how the matter was resolved as to the other named defendant, American University of Madaba, Inc., a New Hampshire non-profit corporation.

In October 2016, a Jordanian court found that Seryani had forged Twal's signature on the Food and Beverage Agreement. The court sentenced Seryani in absentia to one year in prison.

---

[4] These contracts include a "Pool Cleaning Services agreement," a "Landscaping Green Pads Services agreement," a "Pest Control Services agreement," a "Housekeeping & Building Cleaning Services agreement," an "Agriculture Services agreement," a "Maintenance Services contract agreement," and a "Water Management and Treatment Services agreement."

7

Acting through Jordanian counsel, Seryani invoked the arbitration provision of the Transportation Agreement, and in October 2018 a Jordanian court ordered the matter arbitrated. Our record contains no results from that arbitration.[5]

In August 2019, plaintiffs filed this lawsuit. The complaint asserts nine causes of action: (1) fraud; (2) breach of contract (the Management Agreement); (3) breach of contract (the Food and Beverage Agreement); (4) breach of contract (the Transportation Agreement); (5) breach of contract (the Project Contracts); (6) conversion; (7) money had and received; (8) unjust enrichment/quantum meruit; and (9) "common counts--open book." (Capitalization omitted.)

One respondent moved to quash in October 2019, and the others joined later. The motion argued for a stay or dismissal of the action based on lack of personal jurisdiction and an inconvenient forum.[6] In a footnote, the motion also argued Synergy "cannot maintain this action" because it is not registered to conduct business in California.

After "extensive discovery" and related motions, as well as supplemental briefing, the trial court held an evidentiary hearing on the motion to quash over two days in

---

[5] In briefing, respondents represent the arbitration remains "currently pending" (underlining omitted), but their record citation refers to a declaration signed in March 2020.

[6] One of the joinders also asserts improper venue and failure to state facts sufficient to state a cause of action as grounds for dismissal, and another argued the court lacked *subject matter* jurisdiction over the alleged causes of action. A joinder cannot be used to raise issues not addressed in the motion being joined, and several of these issues are not properly raised in a motion to quash at all. (See § 418.10, subd. (a) [grounds for motion to quash].) No defendant filed a separate demurrer to the complaint. (See § 418.10, subd. (e) [defendant may "simultaneously answer, demur, or move to strike the complaint" without making a general appearance].)

8

October 2022, largely dedicated to Seryani's testimony. In December 2022 the court issued a written order granting the motion and dismissing the case as to respondents, as well as Synergy.

DISCUSSION

A. *Personal Jurisdiction*

California's long-arm statute permits a court to exercise personal jurisdiction on any basis consistent with state or federal constitutional principles. (§ 410.10; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268.) When a nonresident defendant has been served with process outside of California, due process requires that the defendant have "such minimum contacts with the state that the assertions of jurisdiction does not violate '"traditional notions of fair play and substantial justice."'" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).)

"Personal jurisdiction can be all purpose (also called 'general') or case linked (also called 'specific')." (*Farina v. SAVWCL III, LLC* (2020) 50 Cal.App.5th 286, 294 (*Farina*).) "A court has all-purpose jurisdiction over defendants who are at home in the court's forum." (*Ibid.*) Also, exercise of all-purpose jurisdiction is appropriate when the nonresident defendant's contacts are "'so "continuous and systematic" as to render [it] essentially at home in the forum State.'" (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 139.) "All-purpose jurisdiction allows a court to hear any claim against a defendant, no matter where the underlying events happened." (*Farina*, *supra*, 50 Cal.App.5th at p.

9

294.)  In this appeal, however, only case-linked jurisdiction is at issue as to the nonresident respondents.[7]

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation."'" (*Walden v. Fiore* (2014) 571 U.S. 277, 283-384.)  There are three requirements: "First, the defendant must have purposefully availed himself of the privilege of conducting activities in this state, thereby invoking the benefits and protections of California's laws.  Second, the claim or controversy must relate to or arise out of the defendant's forum-related contacts.  Third, the exercise of jurisdiction must be fair and reasonable and should not offend notions of fair play and substantial justice." (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 392 (*Rivelli*); accord *Ford Motor Company v. Montana Eighth Judicial District Court* (2021) 592 U.S. 351, 359 (*Ford*).)

"When a nonresident defendant challenges a trial court's exercise of personal jurisdiction, the plaintiff bears the initial burden to demonstrate facts justifying the exercise of jurisdiction." (*Rivelli, supra*, 67 Cal.App.5th at p. 393.)  To meet this burden, the plaintiff "must support its allegations with 'competent evidence of jurisdictional

---

[7]  In their opening brief, plaintiffs recite some principles of all-purpose jurisdiction, but their arguments address only case-specific jurisdiction.  Plaintiffs have therefore forfeited any argument that the nonresident respondents are subject to all-purpose jurisdiction.  (See *League to Save Lake Tahoe v. County of Placer* (2022) 75 Cal.App.5th 63, 105 ["arguments not raised in an opening brief are forfeited"].)  In their reply brief, plaintiffs assert—in passing—that there is "sufficient basis" in the evidence for "the exercise of both specific and general jurisdiction by the California trial court."  Even if it were not forfeited, the record contains no evidence even arguably sufficient to establish all-purpose jurisdiction over the nonresident respondents.

10

facts.'"  (*Ibid.*)  "'If the plaintiff meets this initial burden, then the defendant has the burden of demonstrating "that the exercise of jurisdiction would be unreasonable."'"  (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.)

"When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence."  (*Vons*, *supra*, 14 Cal.4th at 449.)  "When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record."  (*Ibid.*)

In their appellate briefs, plaintiffs acknowledge the substantial evidence standard of review that applies to the trial court's resolution of disputed factual matters, but then ignore it.  "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable."  (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.)  "[F]act-specific arguments which ignore the substantial evidence standard of review are not appropriate."  (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.)  "An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment."  (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408; accord *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 ["[A]n attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent that a substantial amount of evidence was received on behalf of the

11

respondent"].)  Arguably, therefore, plaintiffs forfeited any challenge to the trial court's factual findings or the legal conclusions flowing from them.  Nevertheless, we exercise our discretion to address plaintiffs' arguments on the merits.

Plaintiffs describe four categories of activity that they argue show purposeful availment by the nonresident respondents: (1) the contracts alleged in the complaint; (2) respondents' fundraising for the university project in California; (3) the "General Power of Attorney" Seryani describes as allowing him "to act on behalf of the [Latin Patriarchate of Jerusalem] for any matters relating to the [American University of Madaba]"; and (4) the California effects of "Defendants' money laundering plan."  We will discuss each of these purported bases for jurisdiction separately.

1. *Contracts*

Plaintiffs argue their contracts with respondents—specifically, with the American University of Madaba, the Latin Patriarchate of Jerusalem, and Twal—make exercise of case-specific jurisdiction appropriate.  The trial court disagreed, as do we.

"A forum has jurisdiction over defendants who reach out and create continuing relationships and obligations with the forum's residents."  (*Farina*, *supra*, 50 Cal.App.5th at p. 299.)  A contractual relationship "centered" in the forum state may justify exercise of specific jurisdiction.  (*Ford*, *supra*, 592 U.S. at p. 359.)  Nevertheless, "a contract with a forum resident, alone, is insufficient to establish jurisdiction."  (*Farina*, *supra*, at p. 299; see *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478 (*Burger King*).) "Courts must scrutinize the underlying business transaction—past negotiations,

12

contemplated future consequences, contract terms, and the parties' actual course of dealing—to determine whether the defendant purposefully established minimum contacts with the forum." (*Farina*, at p. 299; see *Burger King*, at p. 479.)

Plaintiffs assert respondents "purposefully availed themselves of California's resources and benefits" by contracting with plaintiffs, who are "California-based." This ignores that the trial court found plaintiffs *not* to be California-based during the relevant time. There is substantial evidence to support that finding. In the related New Hampshire litigation, Seryani submitted a declaration attesting: "I was a resident of the kingdom of Jordan during the time September 1st, 2012 through the 18th, of November, 2015." Twal declared that he visited Seryani and his wife at his home in Jordan during the relevant period. Synergy had a California address, but is an Indiana LLC with Seryani as its only member, and performed work in Jordan through a Jordanian subsidiary, as required by Jordanian law. Respondents declared in support of their motion that "The [American University of Madaba] project was entirely conducted in Jordan. All meetings and decisions were made in Jordan or Jerusalem. All contracts were signed in Jordan." Plaintiffs were paid for their performance on the contracts in Jordanian dinars through Jordanian financial institutions.

Similarly, plaintiffs' version of events is that respondents "knew that [plaintiffs] would perform their contractual obligations in California" and that Twal, acting on behalf of the Latin Patriarchate of Jerusalem and the American University of Madaba, requested they acquire equipment for the university that was "'made in California.'" This is

13

contradicted, however, by declarations submitted by respondents, including Twal, who averred: "All contracts were to be performed in Jordan. No work was anticipated to occur in California."

The terms of the alleged contracts tend to support the trial court's finding that respondents did not purposefully establish minimum contacts with California. None of the contracts in our record expressly contemplate plaintiffs doing anything in California. Thus, plaintiffs' description of various actions they (or third parties acting at their direction) took in California to satisfy their contractual obligations or otherwise facilitate the university project arguably shows only unilateral acts by plaintiffs (or third parties), not purposeful availment by the nonresident respondents. (See *Burger King*, *supra*, 471 U.S. at p. 475 [The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts [citations], or of the 'unilateral activity of another party or a third person' [citations]"].) Also, each of the contracts has a choice of law clause that selects a forum other than California as its governing law. (See *T.A.W. Performance, LLC v. Brembo, S.p.A.* (2020) 53 Cal.App.5th 632, 646 ["Choice-of-law and forum selection clauses, 'standing alone', are not dispositive," but "may 'reinforce[]' whether or not a foreign corporation has made such 'a deliberate affiliation with the forum State' as to support a conclusion that it should have reasonably foreseen 'possible litigation there'"].)

Plaintiffs also ignore the Jordanian court's finding that Seryani forged the signature of the American University of Madaba's representative on the Food and

14

Beverage Agreement. They offer no reason why the Food and Beverage Agreement might nevertheless be an appropriate basis for exercising jurisdiction over the nonresident respondents.

In short, the trial court resolved in favor of respondents the evidentiary conflicts about the parties' contractual relationships that relate to the purposeful availment analysis. That decision was supported by substantial evidence, so we will not disturb it.

2. *Fundraising*

According to plaintiffs, the Latin Patriarchate of Jerusalem "routinely and systematically solicits and collects millions of dollars [in donations] from California residents," including "a significant amount of University-specific funds from California citizens." In their view, such fundraising efforts constitute minimum contacts sufficient to justify exercising personal jurisdiction. The trial court, however, rejected plaintiffs' version of the facts.

Plaintiffs describe the Latin Patriarchate of Jerusalem as "operat[ing] three parishes in California," and employing priests ordained by the Latin Patriarchate of Jerusalem. These parishes "provided funding" to the Latin Patriarchate of Jerusalem and the American University of Madaba, both directly and by transmitting the donations of their California-based parishioners to the "San Francisco-based" non-party Queen of Peace Foundation, which in turn sends the donations to the Latin Patriarchate of Jerusalem. Plaintiffs also emphasize the activities of the non-party Equestrian Order of the Holy Sepulchre of Jerusalem, which raises substantial funds in California through its

15

Western USA Lieutenancy, and which distributes funds to recipients that include the Latin Patriarchate of Jerusalem.[8] And plaintiffs contend Twal travelled to California in 2011 and 2012 to fundraise for the university.

Respondents, however, disputed plaintiffs' account in several ways. According to respondents, plaintiffs mischaracterize the entities allegedly conducting fundraising. Thus, the "jurisdiction" of the Latin Patriarchate of Jerusalem is "the Holy Land," meaning "Palestine, Israel, West Bank, Jordan and Cypress." The California parishes that are the focus of plaintiffs' allegations are operated by their local dioceses—the Roman Catholic Archbishop of Los Angeles or the Roman Catholic Bishop of San Bernardino—and not the Latin Patriarchate of Jerusalem. The priests of those parishes are local employees, no matter what organization ordained them.

According to respondents, the Queen of Peace Foundation is a Nevada-based organization, though it has a California office, and it is an independent entity of which respondents have no interest or control. Neither the Latin Patriarchate of Jerusalem nor the American University of Madaba solicited donations from the Queen of Peace Foundation, nor did they engage in fundraising activities together with the Queen of Peace Foundation.

---

[8] The Equestrian Order of the Holy Sepulchre of Jerusalem describes itself as a "'legal canonical and public personality, constituted by the Holy See,' headquartered in Rome, Italy." This entity, in addition to "religious and spiritual aspects," provides "'financial support for the Church in the Holy Land, in particular—but not only—for the Latin Patriarchate of Jerusalem.'"

16

In the same vein, respondents produced evidence that the California-based Western USA Lieutenancy of the Equestrian Order of the Holy Sepulchre of Jerusalem is an independent entity from its parent organization in Rome, and is neither owned nor controlled by respondents. Any funds raised by that California entity were sent to its parent organization, not to the Latin Patriarchate of Jerusalem, and without any earmark designating funds raised in California to be passed on to the Latin Patriarchate of Jerusalem.

Respondents also denied they directly engaged in any fundraising for the university project in California. That denial was supported by Twal's deposition testimony and declaration. He confirmed that he had made "pastoral" visits to the United States but denied doing any fundraising for the university project during those trips.

Thus, there was conflicting evidence as to whether respondents engaged in fundraising in California for the university project. The trial court found more "persuasive" respondents' evidence that they did not do so. On substantial evidence review, we are not empowered to disturb that finding.

3. *Power of attorney*

Plaintiffs argue that by granting power of attorney to "Seryani, a California resident, Twal purposefully availed himself 'of the privilege of conducting activities within' California by having his agent (Seryani) conduct and direct business in California on his (Twal's) behalf in connection with the university."

17

This argument ignores the trial court's findings that Seryani was *not* a California resident during the relevant time, and its rejection of Seryani's testimony that "he was sought out by" Twal to do things in California for the university project. Moreover, the power of attorney does not expressly anticipate Seryani exercising the granted authority in California, as opposed to anywhere else in the world. Thus, the power of attorney does not demonstrate any basis for California to exercise jurisdiction over Twal or the other nonresident respondents.

4. *In-forum effects*

As plaintiffs note, "[o]ne of the recognized bases for jurisdiction in California arises when the defendant has caused an 'effect' in the state by an act or omission which occurs elsewhere." (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445.) Applying this principle, plaintiffs argue that respondents caused an effect in California by "reach[ing] out to Seryani and Synergy, both based in California, in particular to take advantage of the[ir] expertise and their ability to perform services in California" to "further [respondents'] money laundering plan." Again, this argument fails because the trial court rejected its factual premises, finding plaintiffs were not California residents during the relevant period, and accepting respondents' evidence that they did not anticipate plaintiffs doing anything in California.

We conclude plaintiffs have shown no appropriate basis to disturb the trial court's decision that it lacked personal jurisdiction over the nonresident respondents.

18

B. *Inconvenient Forum*

Because the nonresident respondents were properly dismissed on jurisdictional grounds, we need not consider how the doctrine of forum nonconveniens might apply to them. A different analysis is required for the Roman Catholic Bishop of San Bernardino and the Roman Catholic Archbishop of Los Angeles, which are domiciled in California and therefore subject to general jurisdiction in California courts. These two California resident respondents asked the trial court to stay or dismiss the case as to them because California is an inconvenient forum for this lawsuit, proposing Jordan as the more appropriate alternative. The trial court did not expressly discuss forum non conveniens in its ruling, but by dismissing these respondents it apparently found the doctrine applied. We find it should not have done so.

1. *Applicable law*

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).) While "[v]enue and jurisdiction involve the power of the court to hear and determine a cause of action," "[t]he forum non conveniens doctrine assumes such power and focuses instead on equitable reasons for a court to decline to exercise it." (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 920 (*NFL*).)

The doctrine is codified: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (§ 410.30, subd. (a); see *NFL*, *supra*, 216 Cal.App.4th at p. 923 [discussing codification].)

"A trial court considering a forum non conveniens issue engages in a two-step process; the first step is to determine whether a suitable alternative forum exists." (*NFL*, *supra*, 216 Cal.App.4th at p. 917.) "An action will not be dismissed unless a suitable alternative forum is available to the plaintiff." (*Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 758 (*Hansen*).) Because of this factor, "'the suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction" in the alternative forum. (*Stangvik*, *supra*, 54 Cal.3d at p. 752.)

Generally, an alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations. (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464 (*Morris*); accord *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 711 (*Boaz*) [a forum may be suitable "if the defendant is amenable to process there, there is no procedural bar to the ability of courts of the foreign jurisdiction to reach the issues raised on their merits (or, if there is, the advantage of the bar—typically, the statute of limitations—is waived by defendants)"].) "It is sufficient that the action can be brought, although not necessarily won, in the suitable alternative forum." (*Morris*, at p. 1464.)

20

There is a limited "'no remedy at all'" exception, which applies "only in 'rare circumstances,' such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law." (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 133-134; accord *Boaz*, *supra*, 40 Cal.App.4th at p. 711 [forum may be suitable if "adjudication in the alternative forum is by an independent judiciary applying what American courts regard, generally, as due process of law"].)

If a court determines a suitable alternative forum exists, it must "decide whether the private and public interests, on balance, favor retaining the action in California." (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 473 (*Animal Film*).) "A case-by-case examination of the parties, their dispute, and the relationship of each to the state of California is the heart of the required analysis." (*NFL*, *supra*, 216 Cal.App.4th at p. 921.)

"The defendant, as the moving party, bears the burden of proof on a motion based on forum non conveniens." (*NFL*, *supra*, 216 Cal.App.4th at p. 918.) There is some uncertainty whether the de novo or substantial evidence standard of review applies to a trial court's ruling regarding the availability of a suitable alternative forum. (See *ibid.*) In this case, however, our analysis would be the same under either standard. We review the weighing and balancing of public and private factors for abuse of discretion, giving "'substantial deference'" to the trial court's ruling. (*Stangvik*, *supra*, 54 Cal.3d at p. 751.)

21

Respondents have not addressed in briefing, either in trial court or here, the threshold issue of whether Jordanian courts would have jurisdiction over the Roman Catholic Bishop of San Bernardino and the Roman Catholic Archbishop of Los Angeles. Defendants typically consent or stipulate to jurisdiction in the proposed alternative forum to support a finding of suitability on a forum non conveniens motion. (See, e.g., *Stangvik*, *supra*, 54 Cal.3d at p. 752; *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1191; *Morris*, *supra*, 144 Cal.App.4th at p. 1464.) That has not happened here. The two California resident respondents have shown no signs of being amenable to defending plaintiffs' claims against them in Jordan. Instead, they have argued they should not be in the case at all and were joined as Doe defendants solely to support plaintiffs' efforts to try the case in California. While their dismissal from the case could be an appropriate argument to advance in a different context,[9] it does not establish that the case could be dismissed due to an inconvenient forum. Quite the contrary. (See *Animal Film*, *supra*, 193 Cal.App.4th at p. 473 [evidence did not support finding of suitable alternative forum where defendant did not expressly submit to jurisdiction nor waive statute of limitations defense].)

Because the California resident respondents have not demonstrated a suitable alternative forum for the claims against them, it does not matter how inconvenient a

---

[9] At oral argument, plaintiffs' counsel stated he "would not concede" that a demurrer to the current complaint by the nonresident respondents would be successful, but he did not "recall" any specific allegations against them, and instead noted that "one result of a demurrer is leave to amend the complaint."

forum California may be for this lawsuit.  (*Stangvik*, *supra*, 54 Cal.3d at p. 752; *Hansen*, *supra*, 51 Cal.App.4th at p. 758.)  The trial court erred by dismissing them.

C. *Synergy's Dismissal*

In ruling on respondents' motion to quash, the trial court dismissed Synergy as a plaintiff, citing Corporations Code section 17708.07, subdivision (a) (section 17708.07(a)).  The trial court interpreted that statute to mean Synergy is "not a viable [p]laintiff," since it is a foreign limited liability company not currently registered in California.  We disagree with that interpretation.

Section 17708.07(a) states: "A foreign limited liability company transacting intrastate business in this state shall not maintain an action or proceeding in this state unless it has a certificate of registration to transact intrastate business in this state."  This only means, however, that an unregistered foreign limited liability company "may not . . . *maintain* an action [in California courts] commenced prior to" obtaining certification until it has come into compliance.  (*United Medical Management, Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1739 (*United Medical*) [addressing parallel requirements for foreign corporations].)  It nevertheless may "*commence* an action in [California] state court."  (*Ibid.*; see also *Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370 ["a plea of lack of capacity of a corporation to maintain an action by reason of a suspension of corporate powers . . . 'is a plea in abatement . . . .'"].)

Capacity to maintain an action is properly raised either in a demurrer or as an affirmative defense in the answer.  (*United Medical*, *supra*, 49 Cal.App.4th at p. 1740;

23

accord *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604.)  If a defendant timely challenges the foreign company's capacity to sue, the matter "[o]rdinarily . . . should be stayed to permit [it] to comply" with statutory requirements "by qualifying [to transact intrastate business] and paying fees, penalties and taxes."  (*United Medical*, at p. 1740.)  Alternatively, the stay of proceedings gives the foreign company an opportunity "to obtain a judicial determination as to whether it is in fact transacting intrastate business," and thus is subject to the registration requirements.  (*Ibid.*)  If the foreign company must register and fails to do so even after a stay, then the matter is properly dismissed.  (*Ibid.*)  But even then, the dismissal should be without prejudice to refiling the action if the company later registers.  (*Ibid.*)

Thus, the trial court was incorrect to dismiss Synergy for lack of compliance with the registration requirement.  Assuming a company's capacity to maintain an action is properly raised in a motion to quash, and assuming respondents properly raised it here—both questionable assumptions[10]—the trial court should have stayed the matter instead. Only after allowing Synergy to come into compliance with the registration requirements, or to show that it was not subject to them, could dismissal without prejudice become appropriate.

---

[10]  As plaintiffs point out, section 418.10, which governs motions to quash, lists the "purposes" of a motion to quash, and the list does not include a challenge to the plaintiff's corporate power to maintain a lawsuit.  Also, respondents' motion to quash raised the issue only in a footnote observing Synergy's lack of registration and stating that Synergy therefore lacked the power to "maintain this action."  The same argument was also raised in one of the joinders.

DISPOSITION

The judgment is affirmed as to His Excellency Archbishop Pierbattista Pizzaballa, American University of Madaba Company, American University of Madaba, American University of Madaba, Inc., Latin Patriarchate of Jerusalem, Latin Patriarchal Vicariate Ecclesiastical Court, Mukawer Castle for Education Company, His Beatitude Fouad Twal, and His Excellency Archbishop William Shomali.  The judgment is reversed as to The Roman Catholic Bishop of San Bernardino, The Roman Catholic Archbishop of Los Angeles, and Synergy.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

MILLER

Acting P. J.

FIELDS

J.